**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-1940
_____

PARMINDER SINGH,
a/k/a Parminder Singh Sandhu,
a/k/a Pajur,
                                    Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES OF AMERICA,
                                    Respondent
_____

Petition for Review of an Order of the Board of Immigration Appeals
(BIA No. A208-601-650)
Immigration Judge: Honorable Leo A. Finston
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
October 11, 2017
_____

Before: HARDIMAN, SHWARTZ, and ROTH, Circuit Judges.

(Filed: November 15, 2017)

_____

OPINION[*]
_____

SHWARTZ, Circuit Judge.

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Petitioner Parminder Singh petitions for review of the Board of Immigration Appeals's ("BIA") opinion denying Singh's claims for asylum under 8 U.S.C. § 1158, withholding of removal under 8 U.S.C. § 1231(b)(3), and relief under the Convention Against Torture ("CAT"). Because Singh's due process rights were not violated, the record does not compel a conclusion that Singh was credible or that potentially corroborating evidence was unavailable, and he failed to meaningfully challenge before the BIA the denial of his CAT claim, we will deny the petition for review in part and dismiss it in part.

I

Singh is a native and citizen of India who entered the United States in 2015 without a valid entry permit. The Department of Homeland Security served him with a Notice to Appear, asserting that he was inadmissible pursuant to 8 U.S.C. § 1182(a)(7)(A)(i)(I).

In January 2016, the Immigration Judge ("IJ") held a master calendar hearing. Singh appeared with counsel, who stated that he had been retained only to represent Singh in his bond and custody proceedings. Another hearing in March 2016 was postponed because Singh appeared pro se and without a Punjabi interpreter. In May 2016, Singh appeared with different counsel, conceded removability, and filed an application for asylum, withholding of removal, and CAT relief, supported by several documents including affidavits purportedly from his parents. The IJ scheduled the merits hearing for October 18, 2016. In connection with each hearing, Singh received notices that advised him that he may be represented by counsel at no expense to the Government.

2

The notices pertaining to his merits hearing also stated that a list of free legal service providers had been given to him.

In September 2016, Singh's counsel moved to withdraw, stating that Singh and his family "wish[ed] to retain another attorney." A.R. 279. The IJ granted the motion. The day before the October 18, 2016 hearing, Singh submitted pro se additional documents in support of his application that included an amended statement (which, unlike his previous statement, was signed by him); a letter purportedly from his political party in India (the "party letter"); and a letter purportedly from his doctor in India.

At the beginning of the merits hearing, the IJ told Singh that his attorney "wrote to me and said that you no longer wanted him to represent you," to which Singh replied, "Yes, sir." A.R. 116. The IJ then asked Singh, "[D]o you want to go ahead without a lawyer, or do you want time to look for a new lawyer?" A.R. 116. Singh responded, "No. I would like to go without an attorney." A.R. 116. Further, the IJ required Singh to sign his application, and told Singh that by doing so Singh would be swearing to the truth of its contents. Singh confirmed that "[t]hat's all right," A.R. 118, but then indicated that some of the information in his affidavit was not true and was included because of his attorney's error. Singh was permitted to strike from his affidavit information about a brother who was missing and feared dead, and Singh confirmed that there was no other part of his application that he wanted to change.

During the hearing, Singh was questioned about, among other things, his parents' affidavits, which stated that they "pushed [their] child, Gurjeet Singh, to get out of India otherwise he would have been killed as well. Please help keep Gurjeet Singh in the USA

3

otherwise, he alongside [themselves], will be killed in India." A.R. 169-70. Singh said that his brother, Gusharinjeet Singh, is not known as Gurjeet Singh, and when asked who Gurjeet is, said he did not know to whom his parents were referring. Singh explained this apparent false statement by saying that his attorney had written "whatever he understood" from what Singh's parents said in English, and there must have been some confusion. A.R. 145. He further stated that, although he had sworn to the truth of his application and documents in support, he "misunderstood . . . [and] did not read this affidavit." Id.

As to the basis for his claims for relief, Singh asserted that he was subjected to persecution in India because of his membership in a minority political party, the Shiromani Akali Dal Mann Party. He explained that on one occasion in 2015 members of the rival Shiromani Akali Badal Party—which is allied with the ruling BJP party— stopped him while he was driving his scooter, beat him, and told him to stop supporting his party or face death. After spending two days in the hospital, he was accompanied by a local party leader to the police station to report the attack, but the police allegedly refused to record his complaint because it was a complaint against the ruling party.

On cross-examination, the Government's attorney pressed Singh about why the party letter did not specifically mention the 2015 assault, but the IJ intervened: "Since the respondent's unrepresented . . . , I wanted to just notify you that the last sentence of the first paragraph of the letter . . . does seem to reference an attack on the respondent, although . . . with no identifiable details." A.R. 151. The Government's counsel withdrew that line of questioning. Finally, at the close of the hearing, the IJ asked Singh,

4

"[D]id you tell the court everything you wanted to tell—say about your case?" and Singh said, "Yes, sir." A.R. 160.

The IJ denied Singh's application, determining that he could not make a positive credibility finding because, although Singh's "testimony was generally consistent, he filed clearly fraudulent documents in support of his case," A.R. 89, namely his parents' affidavits, which contained false information about Singh's family. The IJ also found that the party letter "casts considerable doubt on the validity of his claim" because it did not contain any details about the 2015 incident and contained information that was inconsistent with Singh's testimony. A.R. 90. Singh testified that his family members were threatened only because of his potential return to India, whereas the letter discussed them having been harassed by the ruling party and the police. Moreover, the IJ found that Singh failed to provide corroborating evidence, noting that Singh "made no effort to obtain an affidavit" from the local party leader who allegedly accompanied Singh to the police station after the attack. Id. The IJ also concluded that even if Singh were credible, he would not grant relief because Singh alleged only a single incident of mistreatment and the incident failed to rise to the level of persecution. Finally, the IJ denied CAT relief because the record did not show that Singh would be tortured, that he had been tortured in the past, or that any public official would be involved in torturing him.

The BIA adopted and affirmed the IJ's decision. The BIA: (1) agreed that Singh was not credible because he submitted affidavits that contained false information; (2) upheld the IJ's determination as to the lack of corroborating evidence; and (3) rejected Singh's arguments that the IJ violated his due process rights, because: (a) the record did

5

not indicate any bias on the IJ's part or that Singh was deprived of a full and fair hearing; (b) the IJ offered Singh a continuance to search for new counsel, but Singh elected to proceed pro se; and (c) Singh was given a reasonable opportunity to present evidence on his behalf and examine the evidence against him. Finally, the BIA declined to consider the additional country reports and internet articles that Singh submitted on appeal because the documents predated the merits hearing and Singh did not move to reopen so the IJ could consider them.

Singh petitions for review.

## II[1]

## A

Our review is typically restricted to the BIA's decision, Abdulai v. Ashcroft, 239 F.3d 542, 549 (3d Cir. 2001), but where, as here, the BIA expressly adopts the IJ's opinion, we also review the IJ's opinion, Sandie v. Att'y Gen. of U.S., 562 F.3d 246, 250 (3d Cir. 2009). We review the IJ's and BIA's legal conclusions de novo and findings of fact for support by substantial evidence. Quao Lin Dong v. Att'y Gen. of U.S., 638 F.3d 223, 227-28 (3d Cir. 2011). Under the substantial evidence standard, those factual findings are "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); see also Jarbough v. Att'y Gen. of U.S., 483 F.3d 184, 191 (3d Cir. 2007).

---

[1] The IJ had jurisdiction over Singh's removal proceedings pursuant to 8 C.F.R. § 1240.1(a). The BIA had jurisdiction over his appeal under 8 C.F.R. § 1003.1(b)(3). We have jurisdiction to review final orders of removal pursuant to 8 U.S.C. § 1252.

B

Singh seeks asylum, withholding of removal, and CAT relief. To obtain asylum, an applicant must show that he is "unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, [the country to which he would be removed] because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A); see id. § 1158(b)(1)(B)(i); see also Garcia v. Att'y Gen. of U.S., 665 F.3d 496, 503 (3d Cir. 2011). An applicant has a well-founded fear of persecution if there is a "reasonable possibility" that he will suffer it. 8 C.F.R. § 1208.13(b)(2)(iii). Establishing past persecution creates a rebuttable presumption of a well-founded fear of future persecution. Id. § 1208.13(b)(1); see also Garcia, 665 F.3d at 503.

To qualify for withholding of removal under 8 U.S.C. § 1231(b)(3)(A), the applicant must show: "(1) that [he] has suffered past persecution in the country of removal on account of race, religion, nationality, membership in a particular social group, or political opinion, in which case, a rebuttable presumption of future persecution applies," or "(2) that [he] will be persecuted in the country of removal—i.e., there is a clear probability that the alien's life or freedom would be threatened upon [his] removal to a particular country." Garcia, 665 F.3d at 505 (citation and internal quotation marks omitted). The clear-probability standard for withholding of removal is more difficult to meet than the reasonable-possibility standard for asylum. Chukwu v. Att'y Gen. of U.S., 484 F.3d 185, 188 (3d Cir. 2007).

7

To obtain CAT relief, an applicant must show "that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." Kibinda v. Att'y Gen. of U.S., 477 F.3d 113, 123 (3d Cir. 2007) (citation and internal quotation marks omitted); see 8 C.F.R. § 208.16(c)(2). "Torture" under CAT "is an extreme form of cruel and inhuman treatment" that is inflicted by or with the acquiescence of a public official and "specifically intended to inflict severe physical or mental pain or suffering." 8 C.F.R. § 208.18(a)(1), (2), (5); see also Auguste v. Ridge, 395 F.3d 123, 143-44, 149 (3d Cir. 2005) (applying the "specific intent" and "more likely than not" standards). This is a "more stringent" standard than that for asylum, but "it does not follow that a failure to meet the asylum standard necessarily precludes a CAT claim." Kibinda, 477 F.3d at 123.

1

In contesting the BIA's and IJ's decisions that he was not entitled to relief, Singh first argues that he was denied due process based on the manner in which the IJ conducted the merits hearing and because he was not provided with a list of pro bono counsel. We disagree.

The Fifth Amendment guarantees aliens due process in all phases of deportation proceedings. Serrano-Alberto v. Att'y Gen. U.S., 859 F.3d 208, 213 (3d Cir. 2017). Thus, "petitioners must receive a full and fair hearing that allows them a reasonable opportunity to present evidence on their behalf . . . and a decision on the merits of their claim by a neutral and impartial arbiter." Id. (citations and internal quotation marks omitted). To show a due process violation, a petitioner must demonstrate "(1) that he

8

was prevented from reasonably presenting his case, and (2) that substantial prejudice resulted." Id. (citation and internal quotation marks omitted).

Singh's due process rights were not violated. He had a reasonable opportunity to present his case as reflected by the fact that he was permitted to submit documents and testify. Indeed, at the end of the hearing, Singh confirmed that he was able to "tell the court everything [he] wanted to tell—say about [his] case." A.R. 160. Moreover, the hearing was conducted in a professional and courteous manner, without any indication of bias on the part of the IJ. For instance, noting that Singh was not represented by counsel, the IJ ensured that the Government's attorney did not pursue a potentially misleading line of questioning suggesting that the party letter made no reference to the 2015 incident, when it appeared that it did. Thus, there is no indication that Singh "was prevented from reasonably presenting his case," he has not identified what else he would have presented, and he has not shown that he was prejudiced by any alleged procedural shortcoming. Serrano-Alberto, 859 F.3d at 213 (citation and internal quotation marks omitted).

Singh also argues that his due process rights were violated because the IJ failed to explain the significance of proceeding without counsel and failed to provide him a list of pro bono or low-cost attorneys at the October 18, 2016 hearing. The Fifth Amendment and the immigration laws provide aliens with the right to counsel of his or her choice at his or her own expense. 8 U.S.C. § 1229a(b)(4); Leslie v. Att'y Gen. of U.S., 611 F.3d 171, 180-81 (3d Cir. 2010). During removal proceedings, immigration judges are required to "[a]dvise the [alien] of his or her right to representation, at no expense to the government, by counsel of his or her own choice . . . and require the [alien] to state then

9

and there whether he or she desires representation," "[a]dvise the [alien] of the availability of pro bono legal services for the immigration court location at which the hearing will take place, and ascertain that the [alien] has received a list of such pro bono legal services providers." 8 C.F.R. § 1240.10(a)(1)-(2).

Singh was not deprived of his right to counsel. He was represented in the proceedings until his second attorney withdrew because Singh and his family wanted to engage different counsel. Singh decided to proceed pro se at the merits hearing, but only after the IJ asked whether Singh wanted a continuance to find a lawyer or wanted to go ahead without one, and Singh plainly stated that he wanted to proceed without counsel. In addition, the undisputed record shows that he was provided with a list of pro bono attorneys prior to that hearing. Each of the six notices of hearings he was provided advised Singh of his right to be represented by counsel at no cost to the Government, and each of the three notices of his merits hearing stated that a list of pro bono counsel had been provided to him. Although the record does not explicitly show that Singh was provided with a list of attorneys specifically "at th[e] time" of his October 18, 2016 merits hearing, Pet'r Br. 13, the undisputed notices he received demonstrate that he was provided with such a list "[i]n [the] removal proceeding," 8 C.F.R. § 1240.10(a), which includes the earlier hearings. Furthermore, Singh has not argued that he would have availed himself of anyone on the list of attorneys if he had again been provided a list at the October hearing, nor has he explained how the proceeding would have been different if the list had been provided then. For these reasons, Singh has not shown a due process violation as a result of his proceeding pro se.

10

Next, Singh asserts that the IJ's credibility finding was erroneous and that he did submit corroborating evidence that the IJ failed to properly consider. The factfinder must make credibility determinations in deciding whether an applicant is entitled to relief. See, e.g., 8 U.S.C. §§ 1231(b)(3)(C), 1158(b)(1)(B)(ii)-(iii). We review credibility determinations under the substantial evidence standard, and therefore must uphold the IJ's adverse credibility determination unless the evidence compels a contrary conclusion. Id. § 1252(b)(4)(B); Kaita v. Att'y Gen. of U.S., 522 F.3d 288, 296 (3d Cir. 2008). Moreover, if the factfinder determines that an applicant should provide corroboration, such corroborating evidence must be provided unless the applicant does not have it or it is not reasonably available. 8 U.S.C. §§ 1158(b)(1)(B), 1229a(c)(4)(B), 1231(b)(3)(C). We cannot reverse a determination as to the availability of corroborating evidence unless the record compels us to conclude that such corroborating evidence is unavailable. Id. § 1252(b)(4); see also Chukwu, 484 F.3d at 192.

Singh lost credibility before the IJ by submitting affidavits from his parents that both referred (in identical terms) to a "brother" Gurjeet Singh, who Singh said he did not know. Moreover, despite his representation that the contents of the documents he submitted (other than his own original affidavit) were true, he admitted that he did not read his parents' affidavits, and when confronted with them, said only that their contents had to be the result of his attorney's error. The presentation of a fraudulent document can justify doubts about an applicant's overall credibility. In re O-D-, 21 I. & N. Dec. 1079, 1083 (BIA 1998). In light of the false information Singh presented, we cannot say that

the evidence compels a contrary conclusion concerning the IJ's finding that Singh lacked credibility. This lack of credibility provided a basis for the IJ to disbelieve that Singh had a subjective fear of persecution, which is dispositive of both his asylum and withholding of removal claims. See Abdille v. Ashcroft, 242 F.3d 477, 496 (3d Cir. 2001).

Singh's challenge to the IJ's corroboration findings also fails. Singh argues that he produced corroborating evidence—in particular, the party letter—and no further opportunity was given to submit additional documentation such as a letter from his party leader, and that the IJ failed to appreciate that the evidence he did submit corroborated his claims. The party letter is not necessarily inconsistent with Singh's account of the 2015 incident. However, during the merits hearing, the IJ asked whether Singh had a report from his local party; Singh said he did not; when asked why not, Singh said that he "did not know about it," A.R. 134; and Singh never said such a letter was unavailable but rather explained only that he left the gathering of corroborating documents up to his family in India, see A.R. 149 ("I had left the country, and whatever my family did."). The IJ thus properly identified the facts for which he expected corroboration, found that Singh failed to submit corroborating evidence, and held that Singh did not adequately explain that failure. See Chukwu, 484 F.3d at 191-92; Toure v. Att'y Gen. of U.S., 443 F.3d 310, 323 (3d Cir. 2006). Because the record evidence does not compel a conclusion that a letter from Singh's party leader was unavailable, we cannot disturb the IJ's conclusion.

Moreover, even if Singh were deemed credible and his claim were sufficiently corroborated, substantial evidence exists to support the IJ's and BIA's determinations that

12

Singh had not shown entitlement to asylum or withholding of removal because he did not present evidence that compels us to conclude that he suffered or would suffer harm that constitutes persecution. The single episode Singh recounted that he contends arose from his political affiliation is insufficient under our case law to demonstrate past persecution, and the record does not demonstrate a reasonable possibility, and therefore no clear probability for withholding-of-removal purposes, of future persecution. See, e.g., Kibinda, 477 F.3d at 120-23 (concluding that a single incident was insufficient to show past persecution, and finding substantial evidence to support the immigration judge's finding that the applicant had not established a well-founded fear of future persecution). Thus, we will deny Singh's petition to review the denial of his asylum and withholding of removal claims.

3

Finally, Singh asserts that he is entitled to CAT relief. The BIA stated in a footnote that Singh "d[id] not meaningfully challenge on appeal the [IJ]'s decision to deny his application for protection under [CAT]," and Singh had therefore "waived this issue." A.R. 3.

In his counseled brief to the BIA, Singh included only a few lines related to his CAT claim, stating that the background material Singh provided "objectively proves persecution," and that the police refused to protect Singh, told him to join the rival party, and threatened to jail him if he complained again, which Singh said showed acquiescence as well as willful blindness. A.R. 17. Although Singh said that the IJ "erred in his analysis," id., he did not explain how the IJ erred. At most, he simply reiterated his view

13

of the evidence.[2]  Because he did not explain how the IJ erred, he failed to meaningfully challenge the denial of his CAT claim and thus did not exhaust the issue.  We therefore lack jurisdiction to review it.  See Lin v. Att'y Gen. of U.S., 543 F.3d 114, 126 (3d Cir. 2008).[3]

## III

For the foregoing reasons, we will deny the petition for review with respect to the denial of his asylum and withholding of removal claims and dismiss his petition to review the denial of his CAT claim.

---

[2] To the extent that his BIA brief sought to assert that the IJ erred by not finding that Singh was tortured or that it was more likely than not that he would be tortured, this would not provide him a basis for relief because there is substantial evidence for the IJ's findings—based on a single incident that occurred in 2015—that he had not been tortured, would not be tortured if removed, and the government of India would not acquiesce in such torture.

[3] The BIA also properly declined to consider various country reports and online news articles concerning alleged mistreatment of Sikhs (Singh is Sikh) as well as articles concerning Singh's political party, all of which predated the merits hearing and which Singh submitted for the first time on appeal.  As an appellate body, the BIA is not permitted to engage in fact-finding or to consider evidence not presented to the IJ.  See 8 C.F.R. § 1003.1(d)(3).  Accordingly, the BIA did not err in refusing to consider this new evidence.