**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-1559
_____

MIGUEL EDUARDO PAZ HERNANDEZ,
Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA
_____

On Petition for Review of an
Order of the Board of Immigration Appeals
(Agency No. A037-283-665)
Immigration Judge: Charles Conroy
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
April 16, 2021
_____

Before: CHAGARES, JORDAN, and SCIRICA, <u>Circuit Judges</u>

(Filed: May 3, 2021)
_____

OPINION*
_____

_____

* This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not
constitute binding precedent.

CHAGARES, Circuit Judge.

Miguel Eduardo Paz Hernandez[1] petitions this Court to review a decision of the Board of Immigration Appeals (the "BIA") dismissing his appeal of the decision of an Immigration Judge (the "IJ," and together with the BIA, the "agency") denying Paz deferral of removal under the United Nations Convention Against Torture ("CAT"). We will deny the petition.

I.

Paz, a citizen of Guatemala, arrived in the United States as a lawful permanent resident in July 1981, a few days shy of his sixth birthday. Paz grew up in Washington Heights, New York, and was a member of a "Dominican gang." Admin. Rec. ("A.R.") 157. In 1993, Paz was convicted in New York state court of second-degree murder and sentenced to fifteen years to life. Around the same time, Paz learned he was epileptic after having his first seizure. Paz married in 1998; his wife is a nurse practitioner and helps treat Paz's epilepsy. After his parole in January 2015, Paz eventually obtained employment as a desktop technician for Bloomberg.

On November 9, 2018, the Department of Homeland Security ("DHS") issued a Notice to Appear charging Paz with being removable due to his murder conviction. Paz was taken into custody and detained at the Bergen County Jail in Hackensack, New Jersey. Through counsel, Paz conceded removability and sought deferral of removal

---

[1] The parties' briefs refer to the petitioner by the surname Paz and we will do the same.

under the CAT. The IJ scheduled a hearing on Paz's application for relief for July 29, 2019 and ordered DHS to produce Paz for that hearing in person.

On the day of the hearing, Paz was not produced but instead appeared remotely from the Bergen County Jail.[2] From that facility, Paz testified that he was afraid to return to Guatemala in part due to the prevalence of gangs and his prior gang affiliation. He explained that while incarcerated, "individuals from Central America, including Guatemala" picked fights with him and called him a "sell out" because he had been in a Dominican gang and not "a gang from Guatemala or from Central America." A.R. 157, 166. Some of these individuals "were . . . sent back" to their countries of origin. A.R. 166. Paz expressed a fear of being recognized by his former antagonists and targeted as a result of his past affiliation, as well as a fear that a gang might try to recruit him and that there would be repercussions for resisting. Besides the gangs, Paz explained that he feared the police in Guatemala because of their reputation for both corruption and being "strict" on individuals with serious criminal records. A.R. 157. He worried the police might perceive him as wealthy and try to extort him. He also did not think the police

---

[2] Because Paz was located in New Jersey at the time of the hearing, the BIA treated the proceedings as having been completed in New Jersey, which would make this Court the proper venue for Paz's petition. 8 U.S.C. § 1252(b)(2). However, the IJ conducted the proceedings from the "New York Immigration Court" in Manhattan, A.R. 124, the case had been docketed in that Court, and the IJ's written opinion applied precedents from the Court of Appeals for the Second Circuit. It is not obvious that the IJ "appear[ed] by video conference within our Circuit," as opposed to Paz appearing by video conference in the Second Circuit. Luzinga v. Att'y Gen., 937 F.3d 244, 250 (3d Cir. 2019). Even assuming venue is improper here, however, the case is ripe for decision, neither party has challenged venue, and the venue requirements of § 1252(b)(2) are not jurisdictional. Id. We therefore retain Paz's petition and do not decide whether venue is proper. Cf. Khouzam v. Att'y Gen., 549 F.3d 235, 249 (3d Cir. 2008).

would be able to protect him from the gangs.  Finally, Paz testified about his epilepsy and the likely difficulty and expense of treating it in Guatemala.

The IJ also heard testimony in support of Paz's application from Dr. Jonathan Rosen, an expert on "gangs, crime, and the drug trafficking trade in Guatemala."  A.R. 74.  Rosen testified that it was "extremely likely" that Guatemalan authorities would be aware of Paz's criminal record, due to information sharing between the United States and Guatemalan governments and because of ongoing monitoring by Guatemalan authorities via "a system of data[]bases" used to track gang activity and persons with serious criminal records.  A.R. 181-82.  Rosen also testified that Paz would "stick out" in the "extreme[]" due to his accent, his inability to read and write Spanish well, and "different cultural things," and that he "could be targeted immediately" for extortion by gangs or the police as a result.  A.R. 185, 209.  Rosen explained that extortion is widespread in Guatemala, especially in poor neighborhoods and of people with family in the United States, that it is the primary form of income for gangs, and that the failure to pay the gangs usually results in torture and eventually death.  Rosen opined that, given widespread corruption and a 95%+ impunity rate, the police were unlikely to protect Paz from the gangs — and that if Paz were stopped in a poor neighborhood or pulled over, he "could be vulnerable" to extortion by the police.  A.R. 191.  Rosen thought Paz would have difficulty finding a job and would thus likely have to live in a poor neighborhood. As to Paz's epilepsy, Rosen testified that if Paz ended up in prison, he would be unlikely to receive his medications, as Guatemala's prisons are underfunded, overcrowded, and often under gang control.  In sum, Rosen averred that "it's extremely likely that [Paz]

4

could be tortured or killed" by gangs or police following an attempt to extort him. A.R. 193. Paz was likely to be extorted, Rosen testified, due to "a number of factors," including that Paz has not been to Guatemala since the early 1990s, that he has been living in and has family in the United States, and that he has a serious criminal record. A.R. 198.

On September 13, 2019, the IJ issued a written decision denying Paz's application for relief and ordering him removed. After summarizing Paz and Rosen's testimony, the IJ found them credible — but also found Rosen's testimony "ultimately unpersuasive." A.R. 80. The IJ noted that Rosen often testified in vague generalities and was "somewhat unclear and evasive at times." A.R. 80. For example, Rosen's testimony about the status of Guatemala's "system of databases" was murky; Rosen was unclear as to whether that system was being implemented, was in place, or was perhaps being rolled back. A.R. 80. And asked how Guatemalan gangs would know of Paz's prior gang membership, Rosen alluded to unspecified media publications about Paz's murder conviction but did not explain what those were or how or why they would be accessed by Guatemalan gangs. These and other issues with Rosen's testimony, while not defeating his credibility, rendered him unpersuasive in the IJ's eyes.

The IJ also held that, while Paz and Rosen had testified credibly, Paz had not submitted corroborating evidence sufficient to meet his burden. Paz's submissions included information on country conditions in Guatemala, records pertaining to his epilepsy, and statements from family members, work colleagues, and others. The IJ gave "diminished weight to documents whose authors were unavailable to be cross-examined"

5

and to unsworn documents prepared by interested witnesses. A.R. 81. The IJ also refused to consider one of Paz's exhibits — a set of documents about his epilepsy — that was not timely submitted before the hearing, as well as an unsworn statement Paz submitted in writing after the hearing.

Analyzing the merits of Paz's CAT claim, the IJ concluded that Paz's theories as to why he was likely to be tortured were speculative and held that Paz had not shown "that each step in the hypothetical chain of events is more likely than not to happen." A.R. 83. For example, the IJ reasoned that it was not more likely than not that Paz would come to the attention of gangs or police upon his return, that even if he did, he would not necessarily stand out due to his accent and American affect, and that even if he did stand out, he would not necessarily be targeted for extortion as a result. The IJ also held that Paz was unlikely to be incarcerated, and that even if it were likely, there was insufficient evidence to find that the Guatemalan government would be willfully blind to, or acquiesce in, harsh prison conditions amounting to torture. As to Paz's epilepsy, the IJ acknowledged a risk of hardship due to Paz's diagnosis, but attributed that risk to the poor state of Guatemala's healthcare system and not to any intentional government action within the meaning of the CAT. Finally, the IJ held that the evidence did not show that Paz would be unable to relocate to a part of Guatemala where he would be unlikely to be tortured.

The BIA affirmed the IJ's decision. The BIA upheld the IJ's finding as to the likelihood of torture and his weighing of Rosen's testimony. As to Paz's epilepsy, the BIA found no clear error with the IJ's conclusion that any treatment difficulties would be

6

attributable to the Guatemala's lack of resources and not to any specific governmental intent to harm Paz. The BIA also rejected Paz's due process challenges to DHS's failure to produce Paz in person for the hearing and to the IJ's exclusion from the record of Paz's untimely submissions.

II.[3]

Paz asserts that the agency's denial of CAT relief was not supported by substantial evidence. He also raises a number of purportedly legal challenges to the agency's decision-making and the IJ's handling of the hearing. We reject all of Paz's arguments and will therefore deny the petition for review.

To qualify for relief under the Convention Against Torture, an applicant must show that "it is more likely than not that he or she would be tortured if removed to the proposed country of removal," and that such torture will be committed "by, or at the instigation of, or with the consent or acquiescence of, a public official . . . or other person acting in an official capacity." 8 C.F.R. § 1208.16(c)(2); id. § 1208.18(a)(1).

Substantial evidence supports the agency's determination that it is not more likely than not that Paz will be tortured in Guatemala. No doubt Paz's proffers could support a

---

[3] We have jurisdiction under 8 U.S.C. § 1252(a)(1) and section 2242(d) of the Foreign Affairs Reform and Restructuring Act of 1998, 112 Stat. 2681-822. See Nasrallah v. Barr, 140 S. Ct. 1683, 1690 (2020). Where, as here, the BIA "adopted the IJ's reasons concerning the denial of CAT relief," we may review both decisions. Grijalva Martinez v. Att'y Gen., 978 F.3d 860, 871 n.11 (3d Cir. 2020). We review factual challenges to CAT orders for substantial evidence; under this standard, "the agency's findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." Id. (cleaned up). We review constitutional claims and legal determinations de novo. Myrie v. Att'y Gen., 855 F.3d 509, 515 (3d Cir. 2017).

conclusion that extortion and gang violence are widespread in Guatemala and that the general risk of physical danger is higher than in the United States. But Paz's explanations as to why he specifically is more likely than not to be tortured depend on a series of contingencies that grow more attenuated at each step. See Denis v. Att'y Gen., 633 F.3d 201, 218 (3d Cir. 2011) (denying CAT relief where applicant's claims were "based on a chain of assumptions and a fear of what might happen" (citation omitted)). As the IJ wrote, eligibility for CAT relief "cannot be established by stringing together a series of suppositions." A.R. 83 (citation omitted). The record here does not compel the conclusion that Paz will more likely than not be tortured upon his return to Guatemala.

Paz's legal challenges likewise lack merit. Three of these challenges — Paz's arguments (a) that the BIA engaged in improper "appellate fact finding" by relying on a fact clearly established in the record, Paz Br. 15; (b) that the agency did not give the proper weight to Dr. Rosen's expert testimony;[4] and (c) that the IJ erred regarding how much Paz would "stand out" in Guatemala, Paz Br. 26 — are not legal at all, but factual challenges in legal garb that fail under substantial evidence review for the reasons already given. Cf. Ku v. Att'y Gen., 912 F.3d 133, 144 (3d Cir. 2019) ("[A] party may not dress up a claim with legal clothing to invoke this Court's jurisdiction." (citation omitted)).

---

[4] Even assuming the unpublished Attorney General opinion Paz relies on for this argument was binding, by its own terms that opinion does not require the IJ or BIA to give conclusive weight to an expert's opinion. See A.R. 24-26 (IJ erred in excluding testimony of expert before his qualifications could be established). Given the issues with Dr. Rosen's testimony, the IJ and BIA were justified in according it the weight that they did, notwithstanding the IJ's credibility finding. See Matter of M-A-M-Z-, 28 I. & N. Dec. 173, 177 (BIA 2020).

Paz's remaining challenges fail on their own terms. First, Paz is correct that the BIA put on Paz the burden of showing that he could not relocate to a part of Guatemala where he is not likely to be tortured, and that the Court of Appeals for the Second Circuit has rejected this allocation of burdens. See Manning v. Barr, 954 F.3d 477, 488 (2d Cir. 2020). But even if the BIA erred in so doing (a question on which we express no opinion), the IJ did not. Rather, the IJ considered relocation as one factor among all those "relevant to the possibility of future torture," as 8 C.F.R. § 1208.16(c)(3) provides. And neither the IJ nor the BIA gave dispositive weight to the issue of relocation and substantial evidence supported their ultimate determinations, so any error was harmless.

Second, DHS's failure to produce Paz in person did not violate due process. While Paz's counsel expected to be able to confer with Paz during the hearing, the IJ offered to clear the courtroom during breaks in the hearing to allow counsel and client to do just that. More importantly, Paz has articulated no substantial prejudice resulting from his remote appearance. See Denis, 633 F.3d at 219 (due process challenge requires showing of substantial prejudice). Paz relies on Leslie v. Attorney General, 611 F.3d 171 (3d Cir. 2010), for the proposition that he need not show prejudice, but that decision is inapposite. Contrary to regulations, the IJ there failed to advise the respondent of the availability of free legal services, tainting the subsequent proceedings. Id. at 180-82. Paz, on the other hand, has been counseled for much of these proceedings.

Finally, the IJ's exclusion of Paz's untimely evidence did not violate due process. Even assuming the evidence was timely filed or otherwise should have been admitted, Paz again has shown no prejudice from its exclusion. The bulk of the excluded evidence

9

pertained to "the cost for Mr. Paz's epilepsy medicine, the absolute necessity for that medicine," and deficiencies in Guatemala's healthcare system. Paz Br. 24-25. But the IJ found that any hardship due to the difficulty of treating Paz's epilepsy in Guatemala could not be attributed to a specific government intent to harm him. That finding was supported by substantial evidence, and so any error in the exclusion of the epilepsy materials was harmless. Paz's opening brief does not challenge the exclusion of his untimely written statement, so any argument on that score is forfeited. See In re Wettach, 811 F.3d 99, 115 (3d Cir. 2016).

III.

For the foregoing reasons, we will deny Paz's petition for review.