PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 08-3180
_____

NEVILLE SYLVESTER LESLIE,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent

_____

Petition for Review of an Order of the
Board of Immigration Appeals
BIA No. A41-329-237

Immigration Judge: Walter A. Durling

_____

Argued March 10, 2010

Before: AMBRO, SMITH and ALDISERT, Circuit Judges
(Filed: July 8, 2010)

CAROLINE BROWN
SARA. B. CAMES (ARGUED)
COVINGTON AND BURLING
1201 Pennsylvania Avenue, N.W.
Washington, D.C. 2004

ATTORNEYS FOR PETITIONER

MICHAEL F. HERTZ
Acting Assistant Attorney General, Civil Division

WILLIAM C. PEACHEY
Assistant Director, Office of Immigration Litigation

JEM C. SPONZO (ARGUED)
U.S. Department of Justice
Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington D.C., 20044

ATTORNEYS FOR RESPONDENT

_____

OPINION OF THE COURT

_____

ALDISERT, Circuit Judge.

Neville Sylvester Leslie petitions for review of a final order of removal of the Board of Immigration Appeals ("Board"), arguing that the Immigration Judge's ("IJ") failure to advise him of the availability of free legal services, as required under 8 C.F.R. § 1240.10(a)(2)-(3), entitles him to a new removal hearing under United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260 (1954). Leslie additionally argues that his statutory and due process rights were violated by a deficient Notice to Appear for the removal hearing. For the reasons that follow, we will grant the petition for review, vacate the Board's decision, and remand for a new hearing.

I.

On October 2, 1998, Leslie, a native and citizen of Jamaica and a lawful permanent resident of the United States, pled guilty to the felony offense of conspiracy to possess and distribute 50 grams or more of "crack" cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846, and was sentenced to 168 months' incarceration. While serving his sentence, Leslie was issued a Notice to Appear by the Department of Homeland Security ("Department"), charging him with being subject to removal under subsections 237(a)(2)(A)(iii) (aggravated felony conviction) and 237(a)(2)(B)(i) (controlled substance conviction) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(2)(A)(iii) & 1227(a)(2)(B)(i). The notice was sent on February 21, 2008, but did not include the time or date of the hearing. (App. 131.) The notice referred to a "list of

3

qualified attorneys and organizations who may be available to represent you at no cost," which was to be provided with the notice. Although a checkmark appeared beside the box that read "Attached is a list of organizations and attorneys which provide free legal services," the list does not appear in the administrative record. (App. 132.)

The record contains a second notice, dated April 8, 2008. It states the date, time, and place of Leslie's removal hearing, but was delivered to "York ICE – Clinton" in York, Pennsylvania. (App. 129.) The "Legal Services List" box is not checked. (App. 129.) On April 8, 2008, Leslie was serving his criminal sentence at Clinton County Prison in McElhattan, Pennsylania. According to Leslie, he was transported by U.S. Immigration and Customs Enforcement officers from Clinton County Prison to York County Prison on April 15 or 16, 2008. (App. 118; Pet'r Br. 7.) Leslie appeared before an IJ at York County Prison on April 16, 2008.[1] When the IJ inquired if Leslie was seeking an attorney, he replied, "I don't have the money, Sir." (App. 115.) The IJ did not explain the availability of free legal resources, nor did he ascertain whether Leslie had received

---

[1]It is not clear from the record precisely when Leslie became apprised of the April 16 hearing. According to the Government, "[b]y virtue of his detention status, [Leslie] was conveyed to his hearing before the immigration judge on April 16, 2008, and informed of the nature of those proceedings." (Resp't Br. 13.)

4

the "Legal Services List." The IJ ordered Leslie removed as an alien convicted of an aggravated felony. (App. 111-113.)

Leslie timely appealed to the Board, which issued a decision on July 11, 2008, dismissing his appeal. (App. 13-14.) Leslie filed a petition for review in our Court on July 21, 2008, and filed a motion to stay his removal on July 24, 2008. On August 14, 2008, this Court granted his request for a stay of removal and appointed him counsel.

II.

The Government's sole argument is that we lack jurisdiction to review Leslie's petition under INA section 242(a)(2)(C), 8 U.S.C. § 1252(a)(2)(C).[2] We disagree. Although

---

[2]Not only is this manifestly incorrect, but the Government's failure to assist the Court in evaluating the specifics of Petitioner's argument required the Court to conduct a special, searching analysis of Petitioner's contentions before, during and after oral argument. As to that portion of Rule 31(a)(1), Federal Rules of Appellate Procedure, directing an appellee or respondent to "serve and file a brief within 30 days after appellant's [or petitioner's] brief is served," we construe the word "brief" to require that the answering brief address every relevant, non-frivolous issue presented by the appellant or petitioner. Litigants should also be mindful of the proper construction of this term when considering Rule 31(c)'s directive that an appellee or respondent "who fails to file a brief

8 U.S.C. § 1252(a)(2)(C) limits our jurisdiction over final decisions ordering removal based on the commission of an aggravated felony or a controlled substance offense, we retain jurisdiction over constitutional claims and questions of law. See 8 U.S.C. § 1252(a)(2)(D); see also Papageorgiou v. Gonzales, 413 F.3d 356, 358 (3d Cir. 2005). Leslie mounts a two-pronged attack on his removal hearing. He argues first that his Notice to Appear was deficient under 8 U.S.C. § 1229(a)(1)(G)(i), thereby denying him a meaningful opportunity to be heard. He argues next that the IJ's failure to inform him of the availability of free legal services, in violation of 8 C.F.R. § 1240.10(a)(2)-(3), deprived him both of his constitutional right to due process and his statutory right to counsel under 8 U.S.C. § 1362. Leslie's appeal presents both a question of law – whether an IJ's failure to comply with 8 C.F.R. § 1240.10(a)(2)-(3) is grounds for a new removal hearing under the Accardi doctrine, and a colorable constitutional claim – whether his removal order is

will not be heard at oral argument unless the court grants permission."

"It is well settled that an appellant's failure to identify or argue an issue in his opening brief constitutes waiver of that issue on appeal." United States v. Pelullo, 399 F.3d 197, 222 (3d Cir. 2005). We make clear that the answering party's dereliction, as here, could not constitute a waiver because, in the final analysis, it is for the Court to evaluate the issues presented by the appellant or petitioner.

6

invalid for insufficient notice under the Due Process Clause and 8 U.S.C. § 1229(a)(1)(G)(i). We have jurisdiction over both claims pursuant to 8 U.S.C. § 1252(a)(2)(D), and we review both issues de novo, Patel v. Ashcroft, 294 F.3d 465, 467 (3d Cir. 2002) (superseded by statute on other grounds).

III.

A.

We first address Leslie's contention that his removal order is invalid because the IJ failed to comply with regulations promulgated by the Attorney General to protect his right to counsel. In particular, Leslie contends that the IJ violated 8 C.F.R. § 1240.10(a)(2)-(3), which directs that "[i]n a removal proceeding, the immigration judge shall" "[a]dvise the respondent of the availability of free legal services provided by organizations and attorneys . . . located in the district where the removal hearing is being held" and shall "[a]scertain that the respondent has received a list of such programs[.]" Although allegations of due process violations must ordinarily be accompanied by "an initial showing of substantial prejudice," Khan v. Att'y Gen., 448 F.3d 226, 236 (3d Cir. 2006) (citation and quotation marks omitted), Leslie contends that these procedural rights are protected by the Fifth Amendment and that, under Accardi, 347 U.S. 260, he need not show prejudice to invalidate his removal order. It is undisputed that the IJ violated 8 C.F.R. § 1240.10(a)(2)-(3) when he failed to advise

7

Leslie of the availability of free legal services and neglected to confirm Leslie's receipt of the list of these programs.[3] We must

_____

[3]The Government makes no argument that the IJ complied with the regulation in question. Nonetheless, we have reviewed the record and we conclude that the sum total of the IJ's colloquy with Leslie regarding his right to counsel is as follows:

Q. "Mr. Leslie, you have a right to be represented by an attorney at no expense to the United States Government. If you want a lawyer, you must find the attorney yourself. The Court may not by law appoint an attorney for you. Do you understand?"

A. "Yes."

Q. "Are you seeking an attorney?"

A. "I don't have the money, Sir."

Q. "All right. Do you want to proceed and answer questions of the Court today?"

A. "Yeah, because I, I – I'd become a National in this country."

(App. 115.)

8

now decide whether the violation of this regulation entitles Leslie to a new removal hearing without a showing of prejudice.

B.

We begin with the long-settled principle that rules promulgated by a federal agency that regulate the rights and interests of others are controlling upon the agency. Columbia Broad. Sys., Inc. v. United States, 316 U.S. 407, 422 (1942). This doctrine was first applied in an immigration case in Accardi, where the Supreme Court vacated a removal order of the Board because the procedures leading to the order did not conform to the applicable regulations. Accardi, 347 U.S. at 268. The Board, appointed by the Attorney General, operated under regulations promulgated by the Attorney General that provided, in part, that the Board "shall exercise such discretion and power conferred upon the Attorney General by law." Id. at 266 (quoting applicable regulations). The petitioner alleged that the Attorney General had circulated a list of "unsavory characters," including Accardi, who the Board then summarily removed without exercise of its discretion. The Supreme Court held that as long as the regulation granting the Board broad discretion remained operative, the Attorney General could not sidestep the Board or dictate its decision in any manner. Id. at 266-267. Without requiring the petitioner to show prejudice, the Accardi Court reversed, holding that Accardi was entitled to a new hearing before the Board if he could prove his allegations in the district court. See id. at 268.

9

After Accardi, the Court continued to require agencies to comply with their promulgated regulations, without requiring petitioners to make a showing of prejudice. In Service v. Dulles, 354 U.S. 363 (1957), the Court invalidated a Foreign Service Officer's national security discharge because the Department of State failed to comply with regulations granting procedural safeguards. Acknowledging that the Secretary of State was not required to adopt the regulations in question, the Court nonetheless held that, "having done so he could not, so long as the Regulations remained unchanged, proceed without regard to them." Id. at 388. There was no discussion of prejudice to the terminated employee. Id. at 389. Two years later, in Vitarelli v. Seaton, 359 U.S. 535, 539-540 (1959), the Court demanded that the Department of the Interior adhere to its employee-discharge procedures when terminating an employee on loyalty grounds, even though the Secretary could have dismissed the employee summarily on non-loyalty grounds. The Court ordered the petitioner reinstated without a showing of prejudice. Id. at 546. Then, in Yellin v. United States, 374 U.S. 109 (1963), the Court held that the failure of a House Committee to comply with its own rule – requiring the Committee to consider harm to the witness's reputation when deciding whether to hold an executive session – excused the witness's refusal to answer questions. Id. at 123-124. With no discussion of prejudice, nor showing of prejudice apparent on the record, the Court held that the Committee's failure to comply with its own rule would constitute an affirmative defense to the charge of criminal contempt. Id.

10

In American Farm Lines v. Black Ball Freight Service, 397 U.S. 532 (1970), however, the Court clarified that not every promulgated regulation is of such a nature that a violation should invalidate agency action. There, the Court sharply limited application of the Accardi doctrine when it imposed an explicit prejudice requirement to sustain an Interstate Commerce Commission ("ICC") award of temporary operating authority, notwithstanding the ICC's failure to comply with regulations requiring applicants to document efforts to obtain service from other carriers. Id. at 538. Distinguishing Accardi and Vitarelli, the Court characterized the regulation at issue as a mere "procedural rule[] adopted for the orderly transaction of business" in order to "aid the Commission in exercising its discretion," rather than a rule "intended primarily to confer important procedural benefits upon indiv[i]duals in the face of unfettered discretion." Id. at 538-539 (quotation and citation omitted). Applying the "general principle" that an agency may always relax its own "procedural rules," the Court held that the action was "not reviewable except upon a showing of substantial prejudice to the complaining party." Id. at 538, 539.

Courts have taken diverse approaches to reconciling the tension between American Farm Lines and Accardi, some imposing explicit prejudice requirements, see, e.g., United States v. Calderon-Medina, 591 F.2d 529, 531 (9th Cir. 1979) ("Violation of a regulation renders a deportation unlawful only if the violation prejudiced interests of the alien which were protected by the regulation."), and others explicitly rejecting a

11

prejudice requirement, see, e.g., Montilla v. INS, 926 F.2d 162, 169 (2d Cir. 1991) ("For these reasons, we hold that an alien claiming the INS has failed to adhere to its own regulations regarding the right to counsel in a deportation hearing is not required to make a showing of prejudice before he is entitled to relief."). The requirement vel non of prejudice is at times simply announced through judicial fiat and at times explicitly reasoned, based often on the nature of the right implicated by the regulation. See, e.g., Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 547 (6th Cir. 2004) (recognizing distinction between regulations that confer important procedural benefits and those adopted merely for internal operating procedures); Lopez v. Fed. Aviation Admin., 318 F.3d 242, 247 (D.C. Cir. 2003) ("[T]his court has been careful to distinguish between procedural rules benefitting the agency (American Farm Lines) and procedural rules benefitting the party otherwise left unprotected by agency rules (Vitarelli), as well as cases in which the agency has failed to exercise discretion required by its regulations (Accardi)."); Martinez-Camargo v. INS, 282 F.3d 487, 491 (7th Cir. 2002) (adopting prejudice standard because it "strikes the proper balance between recognizing the need for administrative agencies to follow their own rules with the practical reality that not every agency violation impacts an alien's substantive rights").

This Court has never explicitly formulated a framework for determining when judicial relief for a regulatory violation must be premised upon a showing of prejudice. See Ponce-Leiva

12

v. Ashcroft, 331 F.3d 369, 385 (3d Cir. 2003) (Rendell, J., dissenting). We last addressed this question in Chong v. INS, 264 F.3d 378, 389 (3d Cir. 2001), where we required the petitioner to show prejudice to obtain a new removal hearing based on the IJ's violation of 8 C.F.R. § 3.7, which requires an IJ's Notice of Certification to the Board to inform parties that they have the right to make representations before the Board. We characterized 8 C.F.R. § 3.7 as procedural and agreed with the Court of Appeals for the Second Circuit that the regulation was "'not grounded in any underlying fundamental constitutional or statutory right.'" Id. at 390 (quoting Waldron v. INS, 17 F.3d 511, 518 (2d Cir. 1993)). The Waldron court carved out a new rule for rights that are "merely provisions created by agency regulations," Waldron, 17 F.3d at 518, by establishing an explicit framework for determining when regulatory violations are reversible error:

> [W]hen a regulation is promulgated to protect a fundamental right derived from the Constitution or a federal statute, and the INS fails to adhere to it, the challenged deportation proceeding is invalid and a remand to the agency is required. This may well be so even when the regulation requires more than would the specific provision of the Constitution or statute that is the source of the right. On the other hand, where an INS regulation does not affect fundamental rights derived from the Constitution or a federal statute, we believe it

13

> is best to invalidate a challenged proceeding only
> upon a showing of prejudice to the rights sought
> to be protected by the subject regulation.

Id. (citation omitted).

Chong stands for the proposition that a violation of a regulation that does not protect fundamental constitutional or statutory rights is reversible error only with a showing of prejudice.[4] See Chong, 264 F.3d at 389-390. Although we

---

[4]We must take this opportunity to rectify a mistake in Chong, where we directly quote an erroneous statement from a Fourth Circuit case – Morgan. See Chong, 264 F.3d at 389-90 (quoting United States v. Morgan, 193 F.3d 252, 266 (4th Cir. 1999)). We stated in Chong:

> Although the Accardi doctrine originally contemplated that an agency's failure to comply with its own rules automatically would nullify its actions, the Supreme Court since has "required that claimants demonstrate prejudice resulting from the violation unless '[t]he rules were not intended primarily to confer important procedural benefits upon individuals in the face of otherwise unfettered discretion' or unless 'an agency required by rule to exercise independent discretion has failed to do so.'" Morgan, 193 F.3d at 267 (quoting Am. Farm Lines v. Black Ball Freight Serv., 397 U.S. 532, 538-39 (1970)).

14

might infer that Chong adopted the complete framework set forth by the Second Circuit in Waldron v. INS, we believe that Chong cannot serve as a clear-cut precedent for cases in this Court where the violation of the regulation impinges on fundamental rights derived from the Constitution or a federal statute, because it conceivably might be considered obiter dictum. Nonetheless, Chong is an important stepping stone in

---

Id. (emphases added). The Morgan case's first use of "unless" renders its characterization of the American Farm Lines language erroneous. Under American Farm Lines, 397 U.S. at 538-539, rules intended to provide "procedural benefits upon indiv[i]duals in the face of otherwise unfettered discretion" can be "exempt . . . from the general principle" that a prejudice showing is required. The case American Farm Lines cites for this proposition, Vitarelli, 359 U.S. 535, confirms this interpretation. As previously discussed, in Vitarelli, procedural rules for federal agency discharge proceedings were violated. Ordinarily, the agency had unfettered discretion to discharge employees; however, the agency had instituted "procedural safeguards" where the agency's reason for discharge was a concern for national security. Id. at 540. Given the circumstances, the Court stated that "scrupulous observance of departmental procedural safeguards is clearly of particular importance." Id. The Court did not mention any prejudice requirement, but instead held that the employee's dismissal for national security reasons was illegal given the agency's procedural violations. Id. at 545.

15

the development of the law, and it encourages us in this case to formulate a framework to serve as guidance on the necessity of proof of prejudice vel non in both circumstances, to wit, where an agency regulation (1) is not grounded in any underlying fundamental constitutional or statutory right and (2) affects fundamental rights derived from the Constitution or a federal statute. The teachings of Chong have furnished the answer to the first set of circumstances. The resolution of this case requires us to furnish the answer to the second. We are persuaded by Waldron, and hold that violations of regulations promulgated to protect fundamental statutory or constitutional rights need not be accompanied by a showing of prejudice to warrant judicial relief.

We believe that this rule comports with Accardi and American Farm Lines. Accardi teaches that some regulatory violations are so serious as to be reversible error without a showing of prejudice, and American Farm Lines, 397 U.S at 539, exempts from this principle those procedural regulations "adopted for the orderly transaction of business." With these precepts in mind, we believe a prejudice rule that distinguishes between regulations grounded in fundamental constitutional or statutory rights and agency-created benefits successfully carves out the procedural regulations exempted by American Farm Lines while honoring Accardi's insistence that some regulatory violations are so serious as to merit judicial relief. We agree also that, absent prejudice, when a violation of immigration regulations implicates less than fundamental rights, wholesale

16

remand places an "unwarranted and potentially unworkable burden on the agency's adjudication of immigration cases." Waldron, 17 F.3d at 518.

We take additional guidance from Supreme Court teachings emphasizing the importance of the root of the regulation in question when determining appropriate judicial relief for regulatory violations. In Morton v. Ruiz, 415 U.S. 199, 235 (1974), the Court required the Board of Indian Affairs to comply with its own internal procedures requiring publication of all directives regarding assistance-eligibility requirements. In so doing, the Court noted that "[w]here the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures. This is so even where the internal procedures are possibly more rigorous than otherwise would be required." Id. (citing Dulles, 354 U.S. at 388, and Vitarelli, 359 U.S. at 539-540). The Court later observed in United States v. Caceres, 440 U.S. 741, 749 (1979), that "[a] court's duty to enforce an agency regulation is most evident when compliance with the regulation is mandated by the Constitution or federal law." Our rule, dispensing with the prejudice requirement for violations of regulations that protect fundamental constitutional or statutory rights, comports with both Morton's focus on individual rights and Caceres's acknowledgment that regulations mandated by the Constitution or federal law command strict compliance.

Additionally, we note that our sister Courts of Appeals have generally required stricter compliance with regulations

17

born of statutory or constitutional rights. See Battle v. FAA, 393 F.3d 1330, 1336 (D.C. Cir. 2005) ("'[A] court's duty to enforce an agency regulation[, while] most evident when compliance with the regulation is mandated by the Constitution or federal law,' embraces as well agency regulations that are not so required." (quoting Caceres, 440 U.S. at 749) (quotation and citation omitted); Waldron v. INS, 17 F.3d 511, 518 (2d Cir. 1993); Arzanipour v. INS, 866 F.2d 743, 746 (5th Cir. 1989) ("The failure of an agency to follow its own regulations is not, however, a per se denial of due process unless the regulation is required by the constitution or a statute."). This rule balances the inherent tension between the well-established deference due administrative agencies, see, e.g., Chevron v. Natural Res. Def. Council, Inc., 467 U.S. 837 (1984), and judicial oversight of agency implementation of regulations. "[A]n administrative agency is not a slave of its rules," Sun Oil Co. v. Fed. Power Comm'n, 256 F.2d 233, 239 (5th Cir. 1958), but "[t]he notion of fair play animating [the Fifth Amendment] precludes an agency from promulgating a regulation affecting individual liberty or interest, which the rule-maker may then with impunity ignore or disregard as it sees fit." Montilla, 926 F.2d at 164. We believe that a rule distinguishing regulatory rights that are statutorily or constitutionally grounded from those that are born purely of regulations comports with these precepts.

Although we agree that prejudice need not be shown when alleged regulatory violations implicate fundamental statutory or constitutional rights, we reject Leslie's assertion that

18

the proper standard is set forth in Montilla, 926 F.2d at 169, where the Court of Appeals for the Second Circuit held that an alien alleging a regulatory violation by the INS need show only that the subject regulation was for the alien's benefit and that the INS failed to comply with it. Leslie fails to note that, just four years after Montilla, the court in Waldron, 17 F.3d 511, effected an affirmative retreat from the strong language in Montilla, limiting that case "to its express terms." Id. at 517. Waldron declared that Montilla "may not be interpreted as suggesting an absolute 'no prejudice' standard *whenever* a challenged regulation is for the benefit of an alien. Any such interpretation is unwarranted given the limited holding in Montilla." Id. (emphasis in original) (quotation marks omitted). Although a subsequent case, Picca v. Mukasey, 512 F.3d 75 (2d Cir. 2008), relied heavily on Montilla's language, we are unpersuaded that Picca restored Montilla's framework. The Picca court applied Montilla's approach only after determining that the right at issue concerned "fundamental notions of fair play underlying the concept of due process," and noting Waldron's conclusion that an alien's right to counsel "derive[s] from the Sixth Amendment right to counsel in criminal cases and the Fifth Amendment right to due process in civil cases." Id. at 78 (quoting Montilla, 926 F.2d at 167, and Waldron, 17 F.3d at 517).

For the sake of emphasis we repeat: we hold that when an agency promulgates a regulation protecting fundamental statutory or constitutional rights of parties appearing before it, the agency must comply with that regulation. Failure to comply

19

will merit invalidation of the challenged agency action without regard to whether the alleged violation has substantially prejudiced the complaining party.

C.

We turn now to the question whether regulation 8 C.F.R. § 1240.10(a)(2)-(3), which was indisputably violated in this case, protects a fundamental statutory or constitutional right, such that we may order a new removal proceeding without a showing of prejudice. We hold that it does.

Regulation 8 C.F.R. § 1240.10(a)(2)-(3) requires that "[i]n a removal proceeding, the immigration judge shall" "[a]dvise the respondent of the availability of free legal services provided by organizations and attorneys . . . located in the district where the removal hearing is being held[,]" and "[a]scertain that the respondent has received a list of such programs[.]" 8 C.F.R. § 1240.10(a)(2)-(3). This regulation derives from 8 U.S.C. § 1362, which provides that "[i]n any removal proceedings before an immigration judge . . . June 21, 2010, the person concerned shall have the privilege of being represented (at no expense to the Government) by such counsel . . . as he shall choose." It is also mandated by 8 U.S.C. § 1229a(b)(4)(A), which commands the Attorney General to adopt regulations ensuring that an alien "shall have the privilege of being represented, at no expense to the Government, by counsel of the alien's choosing who is authorized to practice in such

20

proceedings." It is plain that 8 C.F.R. § 1240.10(a)(2)-(3) protects an alien's right to counsel at removal hearings, which is manifestly a statutory right.

This statutory and regulatory right to counsel is also derivative of the due process right to a fundamentally fair hearing. See Borges v. Gonzales, 402 F.3d 398, 408 (3d Cir. 2005); Iavorski v. INS, 232 F.3d 124, 128 (2d Cir. 2000) (noting that the "statutory right [of aliens] to be represented by counsel at their own expense" is "an integral part of the procedural due process to which the alien is entitled" (quotation and citation omitted)); see also Waldron, 17 F.3d at 517. Aliens in removal proceedings are entitled to Fifth Amendment Due Process protection, which guarantees them a fundamentally fair removal hearing. See Xu Yong Lu v. Ashcroft, 259 F.3d 127, 131 (3d Cir. 2001); see also Dakane v. Att'y Gen., 399 F.3d 1269, 1273 (11th Cir. 2005); Rosales v. Bureau of Immigration & Customs Enforcement, 426 F.3d 733, 736 (5th Cir. 2005). A proceeding may be fundamentally unfair if an alien is prevented from reasonably presenting his case, Bernal-Vallejo v. INS, 195 F.3d 56, 63 (1st Cir. 1999), and we have held that the right to counsel is "so fundamental to the proceeding's fairness that a denial of that right could rise to the level of fundamental unfairness." United States v. Charleswell, 456 F.3d 347, 360 (3d Cir. 2006). Therefore, although the Fifth Amendment does not mandate government-appointed counsel for aliens at removal proceedings, it indisputably affords an alien the right to counsel of his or her own choice at his or her own expense. Borges, 402

21

F.3d at 408; see also, e.g., Brown v. Ashcroft, 360 F.3d 346, 352 n.5 (2d Cir. 2004); Baltazar-Alcazar v. INS, 386 F.3d 940, 944 (9th Cir. 2004). Like the Court of Appeals for the Ninth Circuit, we "warn[] the [government] not to treat [that right] casually." Orantes-Hernandez v. Thornburgh, 919 F.2d 549, 554 (9th Cir. 1990) (quotation and citation omitted).

The right to counsel is a particularly important procedural safeguard because of the grave consequences of removal. In this case, where removal is predicated on the commission of an aggravated felony, see 8 U.S.C. § 1227(a)(2)(A)(iii), the draconian and unsparing result of removal is near-total preclusion from readmission to the United States, with only a remote possibility of return after twenty years. Under 8 U.S.C. § 1182(a)(9)(A)(ii), an alien removed after conviction of an aggravated felony is inadmissible "at any time[.]"[5] Removal "visits a great hardship on the individual and deprives him of the right to stay and live and work in this land of freedom. That deportation is a penalty – at times a most serious one – cannot be doubted." Bridges v. Wixon, 326 U.S. 135, 154 (1945). As Judge Rendell has cautioned, "[w]e must always take care to remember that, unlike in everyday civil proceedings, the liberty of an individual is at stake in deportation proceedings." Ponce-

_____

[5] See also 8 U.S.C. § 1182(a)(9)(A)(iii); 8 C.F.R. § 212.2(a) (providing that Attorney General may consent to readmission twenty years after aggravated-felony removal).

22

Leiva, 331 F.3d at 381 (Rendell, J., dissenting) (quotation omitted).

Compounding the grave consequences of removal, many aliens subject to removal proceedings are unfamiliar with the complex adjudicatory process by which immigration laws are enforced. Many courts have recognized that "our immigration statutory framework is notoriously complex." E.g., N-A-M v. Holder, 587 F.3d 1052, 1058 (10th Cir. 2009); see also INS v. Nat'l Ctr. for Immigrants' Rights, Inc., 502 U.S. 183, 195 (1991) (referencing our "complex regime of immigration law"). The complexity of removal proceedings renders the alien's right to counsel particularly vital to his ability to "reasonably present[] his case." Bernal-Vallejo, 195 F.3d at 63.

Regulation 8 C.F.R. § 1240.10(a)(2)-(3) was manifestly designed to protect an alien's fundamental statutory and constitutional right to counsel at a removal hearing.[6]

_____

[6]Our conclusion accords with Picca v. Mukasey, 512 F.3d 75 (2d Cir. 2008), holding that the regulation specifically at issue today should be enforced against the government without regard to prejudice because it concerns the right to counsel, which is both enshrined in statute and constitutionally derived. Id. at 78-79; see also Castaneda-Delgado v. INS, 525 F.2d 1295, 1300 (7th Cir. 1975) ("[T]he right to be represented by counsel of their choice granted to aliens in deportation proceedings by statute and regulations is too important and

23

Recognizing the difficulty aliens might have in locating and accessing counsel, the regulation reflects the agency view that some aliens may only be able to obtain counsel through low-cost or free legal services. We can think of no better demonstration of that difficulty than Leslie's unrepresented appearance at his removal hearing and his statement that he could not afford counsel. Here it was paramount that the IJ comply with § 1240.10(a)(2)-(3)'s mandate to "[a]dvise the respondent of the availability of free legal services" and to "[a]scertain that the respondent has received a list of such programs[.]" The IJ's failure to apprise Leslie of the availability of free legal services, as required under the regulations, renders invalid the subsequently entered removal order, without regard to Leslie's ability to demonstrate substantial prejudice.

IV.

Leslie contends additionally that he is entitled to a new removal hearing because his Notice to Appear was deficient, in violation of his due process rights and the applicable statute. Pursuant to 8 U.S.C. § 1229(a)(1)(G)(i), an alien is entitled to written notice of removal proceedings specifying, among other things, "[t]he time and place at which the proceedings will be held." From the record presented, we can conclude that Leslie was transported from Clinton County Prison to York County

---

fundamental a right to be circumscribed by a harmless error rule.").

24

Prison on April 15 or April 16 and was present for his April 16 hearing at York County Prison. He received, at most, one day of notice as to the time and place of his removal hearing, and this notice was perhaps effected only by physical transport from one institution to another.

Because we grant Leslie's petition on the basis of the IJ's violation of 8 C.F.R. § 1240.10(a)(2)-(3), we need not decide whether this blatantly tardy notice was constitutionally deficient. Parenthetically, we note that we find it difficult to believe that a notice, issued under 8 U.S.C. § 1229(a)(1)(G)(i), would satisfy the Due Process Clause without affording an alien adequate time and opportunity to prepare arguments on his or her own behalf. Because we grant the petition on other grounds, it is not necessary to rule specifically in this case that subsumed in the requirement of notice is a critical timeliness element. See Abdulai v. Ashcroft, 239 F.3d 542, 549 (3d Cir. 2001) (aliens facing removal are entitled to due process, which includes opportunity to make arguments on their own behalf).

V.

Because the regulation at issue, requiring the IJ to inform Petitioner of the availability of free legal services, protects the fundamental right to counsel at removal hearings, we will enforce it without regard to the existence vel non of prejudice resulting from its violation. It is imperative that the IJ comply scrupulously with these regulations, promulgated to ensure the

25

fundamental fairness of the process by which aliens are removed. As it is undisputed that the IJ entered Leslie's removal order after failing to comply with the requirements of 8 C.F.R. § 1240.10(a)(2)-(3), we will grant the petition for review, vacate the order of the Board, and remand for further proceedings in accordance with the foregoing.[7]

---

[7] We recognize the contribution of pro bono services rendered by appointed counsel for the Petitioner, and note our formal appreciation for counsels' advocacy.