**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 21-3317

_____

JOHAN MANUEL GONZALEZ AQUINO,

Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA

_____

On Petition for Review of a Final Order of the
Board of Immigration Appeals
(Agency No. A057-135-446)
Immigration Judge: Mirlande Tadal

_____

Argued: September 14, 2022

Before: KRAUSE, BIBAS, and RENDELL, *Circuit Judges*

(Filed: November 22, 2022 )

_____

Stephanie E. Norton          [**ARGUED**]
SETON HALL UNIVERSITY SCHOOL OF LAW
CENTER FOR SOCIAL JUSTICE
833 McCarter Highway
Newark, NJ 07102
*Counsel for Petitioner*

Robert Lundberg  [**ARGUED**]
Sarah Pergolizzi
UNITED STATES DEPARTMENT OF JUSTICE
OFFICE OF IMMIGRATION LITIGATION
P.O. Box 878
Ben Franklin Station
Washington, DC 20044
*Counsel for Respondent*

————————

OPINION OF THE COURT

————————

BIBAS, *Circuit Judge*.

"No harm, no foul" is usually good law. If someone spots a flaw in his agency proceeding and asks for a remand, he normally must show that the flaw prejudiced his outcome. Exceptions to this requirement are rare.

Johan Manuel Gonzalez Aquino says the procedural flaws in his removal hearing qualify for such exceptions. They do not. Nor did they prejudice the outcome. So we will deny his petition for review.

## I. GONZALEZ AQUINO FACES REMOVAL

Gonzalez Aquino is a citizen of the Dominican Republic and a lawful permanent resident of the United States. Over the past decade, he has been convicted of burglary, escape, theft, trespass, and more. His two most recent convictions, theft and conspiracy to commit theft, were aggravated felonies and thus

made him removable. So the government began removal proceedings.

Gonzalez Aquino sought to defer his removal under the Convention Against Torture. He claimed that if he returned to the Dominican Republic, he would face two separate threats. First, as a teenager, he got into a gambling dispute with a man who belonged to a well-known criminal gang. The man threatened to kill him, so he moved to the United States.

Second, while in the United States, Gonzalez Aquino was arrested for murdering another Dominican. The murder charges were later dropped, but the damage was done: the murder and arrest had been publicized in the Dominican Republic. The victim's family then threatened to kill him if he returned.

After a hearing, the Immigration Judge rejected his arguments, finding that he had not shown that he would likely be tortured or that the Dominican government would acquiesce to any torture. The proceedings were less than ideal: the judge used legal jargon without explaining it, said little about what evidence he needed to present, and asked few questions. Plus, the videoconference was malfunctioning: though the judge could see him, he could not see her. But the Board of Immigration Appeals still dismissed the appeal.

Gonzalez Aquino now petitions for review, challenging both the hearing's procedure and the Board's substantive decision. Because he is removable for committing an aggravated felony, we lack jurisdiction to review the Board's factual or discretionary decisions. 8 U.S.C. § 1252(a)(2)(C). But we review its legal conclusions and Gonzalez Aquino's

3

constitutional claims de novo. §1252(a)(2)(D); *Myrie v. Att'y Gen.*, 855 F.3d 509, 515 (3d Cir. 2017).

## II. ALMOST ALL ERRORS REQUIRE PROOF OF PREJUDICE

Gonzalez Aquino argues that he need not prove that certain errors prejudiced him. We have held that when an agency violates "a regulation protecting fundamental statutory or constitutional rights," we will remand without requiring proof of prejudice. *Leslie v. Att'y Gen.*, 611 F.3d 171, 180 (3d Cir. 2010). But we have not yet defined what rights are "fundamental" under this test. It is time to do so.

For most constitutional violations, we ask whether any error was harmless. *Arizona v. Fulminante*, 499 U.S. 279, 306–07 (1991); *Serrano-Alberto v. Att'y Gen.*, 859 F.3d 208, 213 (3d Cir. 2017). But in *Leslie*, we went one step further: we required automatic remand—regardless of prejudice—for violations of regulations protecting fundamental rights. Though we did not define fundamental rights, we were concerned with rights that, if violated, make an agency proceeding "fundamentally unfair." *Leslie*, 611 F.3d at 181. *Leslie* focused both on the significance of the right for fair hearings and on the structure needed to secure the right. *See id.* at 176, 181 (drawing on *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 266–67 (1954), which prevented the Attorney General from "sidestep[ping] the Board or dictat[ing] its decision").

Criminal procedure has a direct analogue for *Leslie*'s approach: structural errors that make trials fundamentally unfair. A structural error "'affect[s] the framework within which the trial proceeds,' rather than being 'simply an error in the trial process itself.'" *Weaver v. Massachusetts*, 137 S. Ct. 1899,

1907 (2017) (quoting *Fulminante*, 499 U.S. at 310). There are three categories of structural errors. But outside of direct criminal appeals, only one category requires automatic remand. *See id.* at 1911–12; *Barney v. Adm'r of N.J. State Prisons*, 48 F.4th 162, 165 (3d Cir. 2022). That category comprises errors that "always result[ ] in fundamental unfairness," such as being denied the right to counsel. *Weaver*, 137 S. Ct. at 1908.

*Leslie* also took aim at "fundamental unfairness," typified by denial of the right to counsel. 611 F.3d at 181 (internal quotation marks omitted). *Leslie* involved a regulation requiring immigration judges to tell aliens of their right to counsel and to give them a list of pro bono lawyers. 8 C.F.R. § 1240.10(a)(2)–(3) (2010). This regulation protects the fundamental right to counsel. We held that a violation of that right so undermines the structure of the hearing that we must automatically remand. *Leslie*, 611 F.3d at 180–82.

But we have declined to extend *Leslie* any further. *See, e.g.*, *FDRLST Media, LLC v. NLRB*, 35 F.4th 108, 120–21 (3d Cir. 2022) (requiring proof of prejudice for NLRB venue regulation); *B.C. v. Att'y Gen.*, 12 F.4th 306, 314, 318–19 & n.9 (3d Cir. 2021) (holding that denying an alien an interpreter prejudiced the alien and thus violated due process, but declining to reach the *Leslie* issue). Our reluctance fits *Leslie* and *Weaver*'s rationale: the question is not just how important the right is in the abstract, but also whether the violation undermines the structure of the hearing and necessarily prejudices the outcome.

So to clarify *Leslie*, we hold that for a regulation to protect a fundamental right, a violation must be a structural error that

5

necessarily makes proceedings fundamentally unfair. Very few rights will fit this extraordinary category. By analogy to *Weaver*, these include the rights to counsel and to an unbiased judge. But rights outside this category are not fundamental enough to trigger *Leslie*'s "presumption of prejudice." *Calderon-Rosas v. Att'y Gen.*, 957 F.3d 378, 390 n.9 (3d Cir. 2020).

## III. GONZALEZ AQUINO SHOWS NO FUNDAMENTAL OR PREJUDICIAL ERROR

Gonzalez Aquino alleges four procedural errors. But none triggers *Leslie*'s presumption, and none affected the outcome. *See Serrano-Alberto*, 859 F.3d at 213 (describing the required prejudice).

### A. Using jargon neither violated a fundamental right nor caused prejudice

Gonzalez Aquino claims that the Immigration Judge did not "explain [the charges] in non-technical language." 8 C.F.R. §1240.10(a)(6). He is right: in describing his convictions, she used technical terms like "aggravated felony" and "crimes involving moral turpitude nor [*sic*] arising out of a single scheme of criminal misconduct" without explaining them. AR 157–60. He asserts a fundamental due-process right to have judges explain jargon, but he cites no authority for that claim. We see no fundamental right here. Legal jargon has long confused people. Our system handles this confusion not by banning jargon, but by guaranteeing the fundamental right to counsel. Plus, jargon causes problems at discrete points in a hearing rather than undermining the entire hearing's framework. So the error is not structural, and Gonzalez Aquino must prove prejudice.

6

He does not. Gonzalez Aquino notes a technical misunderstanding during the hearing. Pet'r's Br. 14. But in that misunderstanding, the judge was substantively right. AR 161. And Gonzalez Aquino does not dispute that the judge correctly identified his convictions or that those convictions make him removable. So he suffered no prejudice.

### B. The judge adequately advised Gonzalez Aquino that he had to present evidence

Gonzalez Aquino next says that the judge told him only once that he needed to put on evidence and never told him what specific kind of evidence he needed. A regulation requires immigration judges at removal hearings to advise aliens that they will have a reasonable chance to put on evidence, examine and object to adverse evidence, and cross-examine government witnesses. 8 C.F.R. § 1240.10(a)(4). But that requirement goes to specific pieces of evidence that Gonzalez Aquino failed to introduce or challenge, not to the framework of the proceeding. Unlike a violation of the right to counsel, a violation of the right to present evidence can be addressed on appeal discretely. Petitioners can identify the evidence they would have put on, and we can evaluate whether it would have made a difference. So violations of this right do not trigger *Leslie*'s presumption of prejudice.

In any event, the judge here complied with the regulation. She told Gonzalez Aquino that "you need to provide very specific details and evidence in support of your claim." AR 162. And she specified that "you need to establish that it is more likely than not that you would be tortured, if not by the government but at the consent, acquiescence or willful blindness

of the government if you returned to [the] Dominican Republic." *Id.* This advice satisfied her regulatory duty to tell Gonzalez Aquino that he could present evidence.

Gonzalez Aquino complains that the judge should have done more, but he shows no prejudice. He protests that he offered to name his persecutors and that he did not know that his father had not submitted an affidavit. But he knew what kind of evidence he needed to present. After all, he asked his father to submit the affidavit. And when the government informed him that the affidavit was not in evidence, he expressed no surprise that he was able or expected to produce evidence. Instead, he testified that he "thought it was done." AR 191. He also offered a notarized report from his hometown describing the first threat to his life. This was the kind of specific, relevant evidence that he needed to present. And at oral argument, counsel could not name anything else that he would have introduced that might have changed the outcome. Nor did his brief suggest what difference these additional pieces of evidence would have made. So even if the judge should have said more, that failure did not prejudice him.

The government objects that we should not even be considering this claim because Gonzalez Aquino never exhausted it. But exhaustion is a low bar. It requires only a basic effort to inform the Board that a claim exists. *Hernandez Garmendia v. Att'y Gen.*, 28 F.4th 476, 485 (3d Cir. 2022). He did that here. In his notice of appeal, he wrote, "I believe that the judge said that I was credible but did not have enough evidence. I don't remember her telling me what kind of evidence I needed or giving me a chance to explain why I couldn't get more

evidence." AR 124. That statement was enough to notify the Board and exhaust the claim.

### C. The one-way videoconference did not prejudice Gonzalez Aquino

Next, Gonzalez Aquino points to the lack of two-way video at his hearing. His detention center's technology kept failing: immigration judges could see detainees but not vice versa. Regulations allow hearing by videoconference but require an alien's consent to hold a hearing by telephone. 8 C.F.R. §§ 1003.25(c), 1229a(b)(2)(B). As Gonzalez Aquino correctly observes, videoconferencing protects two important interests: "The Respondent can be seen by those present in the court, and the Respondent can see those present in the court." AR 81. By contrast, a telephonic hearing is purely auditory. As the Immigration Judge could see Gonzalez Aquino, his hearing was a defective videoconference rather than a telephonic hearing. In any event, because Gonzalez Aquino does not argue that this glitch violated a fundamental right, we ask whether he has shown prejudice. He has not.

He argues that the judge switched the exhibit numbers on two pieces of evidence—Gonzalez Aquino's own exhibits—but does not explain how that harmed him. And he says that the one-way video made him less coherent and persuasive. Yet the Immigration Judge found his testimony "credible … candid and responsive." AR 130. And he does not point to any material argument that he would have made more persuasively. So the one-way video did not prejudice him either.

9

### D. The Immigration Judge adequately developed the record

Gonzalez Aquino also argues that the judge failed in her duty to develop the record. The parties quibble about how far this duty extends. Regardless, he has not shown prejudice. He argues that the judge did not ask enough questions. But the government's lawyers developed the record by asking plenty of questions. Plus, Gonzalez Aquino does not point to any fact that would have emerged connecting the Dominican government to the threats. He also says that the judge should have considered country-conditions evidence more carefully, but that evidence would have shown only general corruption and brutality. Gonzalez Aquino needed to show that conditions existed that would affect him personally. So this argument fails too.

## IV. THE BOARD CORRECTLY DENIED GONZALEZ AQUINO'S TORTURE CLAIM

Finally, Gonzalez Aquino argues that the Board substantively erred in analyzing his Convention Against Torture claim. Although we cannot review factual determinations for most of Gonzalez Aquino's appeal, that is not the case for his torture claim. *Grijalva Martinez v. Att'y Gen.*, 978 F.3d 860, 871 n.11 (3d Cir. 2020). Here, we apply the deferential substantial-evidence standard. *Id.* The Board needed to answer two questions: Would he be tortured if he were removed to the Dominican Republic? And would the Dominican government cause or acquiesce to that torture? *Myrie*, 855 F.3d at 516. He insists that the Board ignored key evidence and answered these questions incorrectly.

But Gonzalez Aquino failed to meet his burden of proving government acquiescence. At his hearing, he admitted that he "d[id]n't see any reason why the Dominican Republic or the Dominican government would seek to do [him] any harm if [he] returned." AR 192. He did speculate that his persecutors could have a relationship with the government. But he admitted that he did not know of any such relationship and had no proof of one. Because he bore the burden of proof, this admission is fatal. And it undermines counsel's speculation at oral argument that further questioning might have revealed that the criminal group that threatened him was linked to the government. Gonzalez Aquino also says he should have been able to develop the record on other points. But no elaboration on the dangerousness of his persecutors, the severity of his fear, or the government's corruption can make up for that missing proof of government involvement or acquiescence. So the Board correctly denied relief.

\* \* \* \* \*

The Board got it right on the merits: Gonzalez Aquino admitted that he had no evidence that the Dominican government would torture him or acquiesce to torture. And he cannot prove that any procedural error in his hearing prejudiced him. His only hope is to show that, under *Leslie*, one of the procedural errors was structural and necessarily made his hearing fundamentally unfair. He cannot. So we will deny his petition for review.

11