NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-2425
_____

CANDIDO LOPEZ-GALENO,
                                        Petitioner
v.

ATTORNEY GENERAL UNITED STATES OF AMERICA
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A098-494-492)
Immigration Judge: Mirlande Tadal
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
June 20, 2023
_____

Before: KRAUSE, BIBAS, and MATEY, *Circuit Judges*

(Filed August 11, 2023)
_____

OPINION*
_____

---

*This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

MATEY, *Circuit Judge*.

Petitioner Candido Lopez-Galeno is subject to removal but claims Convention Against Torture ("CAT") protection, citing the threat of violence from police and rival gangs in Mexico. But the Board of Immigration Appeals denied his claim based on substantial evidence after a fair hearing, so we must deny the petition.

**I.**

Lopez-Galeno joined La Gran Familia Mexicana ("LGFM"), a gang in his hometown of San Miguel. After arriving in the United States without admission or parole, he continued his membership and memorialized his affiliation with tattoos including the letters "F" and "M" on his chest—standing for "Familia Mexicana"—and "PMS" on his stomach for "Primos" (his branch of LGFM). After rising in the ranks to sublieutenant, Lopez-Galeno added a tattoo to his left hand depicting a rosary and three dots signifying his new rank.

Lopez-Galeno eventually had a change of heart and decided to leave the gang. He spoke with Eladio "Cholo" Diaz, the "absolute leader" of LGFM in both the U.S. and Mexico, who "respected" Lopez-Galeno's decision. A.R. 220, 221, 169. But a few months later, Lopez-Galeno stabbed a member of a rival gang to death. He pleaded guilty to aggravated manslaughter and was sentenced to twenty-two years' imprisonment.

In 2021, Lopez-Galeno was placed in removal proceedings under 8 U.S.C. § 1182(a)(6)(A)(i) and 1182(a)(2)(A)(i)(I). Lopez-Galeno admitted the allegations, but

sought deferral of removal under the CAT, 8 C.F.R. §§ 1208.16–.18. With relief denied by the IJ and the BIA, Lopez-Galeno now petitions for review.[1]

## II.

We consider each of Lopez-Galeno's arguments and find no errors of law. First, Lopez-Galeno argues he was deprived of due process when the IJ cut short a line of questioning about the appearance of LGFM's leader, Cholo. An important issue, Lopez-Galeno argues, because Cholo and another gang member were killed in Mexico when rivals identified them as LGFM members by their tattoos.

We see no error. The Fifth Amendment guarantees due process to noncitizens at removal hearings, including the fundamental requirement of an "opportunity to be heard at a meaningful time and in a meaningful manner." *Dia v. Ashcroft*, 353 F.3d 228, 239 (3d Cir. 2003) (en banc) (citation omitted). This includes "key protections," like receipt of "a full and fair hearing that allows . . . a reasonable opportunity to present evidence."[2] *Serrano-Alberto v. Att'y Gen.*, 859 F.3d 208, 213 (3d Cir. 2017) (citation omitted). But outside of a few "structural error[s] that necessarily make[] proceedings fundamentally unfair"—such as deprivation of a right to counsel or an unbiased judge—due process

---

[1] The BIA had jurisdiction pursuant to 8 C.F.R. § 1003.1(b)(3), and we have limited jurisdiction to review the Board's decision under 8 U.S.C. § 1252(a)(4), *see Nasrallah v. Barr*, 140 S. Ct. 1683, 1690–92 (2020); 8 C.F.R. § 1208.18(e). "[W]e review the BIA's legal determinations de novo," *Zhi Fei Liao v. Att'y Gen.*, 910 F.3d 714, 718 (3d Cir. 2018) (citation omitted), and its findings of fact in denying CAT protection for substantial evidence. *Nasrallah*, 140 S. Ct. at 1692.

[2] Similarly, noncitizens have a statutory right under the Immigration and Nationality Act to a "reasonable opportunity" to "present evidence on [their] own behalf." 8 U.S.C. § 1229a(b)(4)(B).

violations require a finding of prejudice. *Aquino v. Att'y Gen.*, 53 F.4th 761, 766 (3d Cir. 2022).

Lopez-Galeno suffered no prejudice. He has not identified what additional testimony he would have given, suggesting only that it would have bolstered the resemblance between his and Cholo's tattoos. But the IJ agreed the two men had similar tattoos, so Lopez-Galeno has not shown the additional evidence "would have made a difference."[3] *Id.* at 767.

Second, Lopez-Galeno argues the Agency failed to aggregate the risks of his return and erroneously viewed his claim of danger as a "series of suppositions" based on "an unlikely hypothetical chain of events." A.R. 6, 54–55, 90–91. But the Agency's "chain of events" language referred to the events necessary for *any* of the groups Lopez-Galeno identifies to spot his tattoos, recognize their nature,[4] and then torture Lopez-Galeno as a result. That is too attenuated a tale to find a greater-than-not likelihood of future torture. *Cf. In re J-F-F-*, 23 I. & N. Dec. 912, 917–18 & n.4 (A.G. 2006). And, in any event, the IJ specifically concluded Lopez-Galeno "has not demonstrated the

---

[3] *Serrano-Alberto* highlights the kinds of prejudice needed for a due process violation. In that case, the IJ engaged in inappropriate conduct with a "pervasiveness and egregiousness," interrupting and cabining "critical" testimony, focusing on "irrelevant details, making findings contradicted by the record, and maintaining a condescending and belligerent tone." 859 F.3d at 224. Here, the IJ cut short a single descriptive discussion because she accepted Lopez-Galeno's point. That fell within her "broad discretion to conduct and control immigration proceedings." *Matter of J-G-T-*, 28 I. & N. Dec. 97, 102 (BIA 2020).

[4] The IJ reasonably found Lopez-Galeno's tattoos unlikely to be recognized. They include no gang colors; the visible tattoos are not particular to LGFM; and the tattoos more specific to the Gran Familia are covered by ordinary clothing.

4

cumulative risk from gangs, cartels and the police in Mexico makes it more likely than not that he will be tortured upon return." A.R. 55, 91. Similarly, the BIA noted that "[t]he Immigration Judge considered the aggregate risk of harm from rival gangs, cartels, and the police, and found, without clear error, that [Lopez-Galeno] does not face a 'more likely than not' risk" of torturous harm. A.R. 8. Both showing Lopez-Galeno's risks were considered in their aggregate.

Lopez-Galeno counters that the IJ ignored that he could also be targeted as a rival criminal deportee or recruited because of his experience and knowledge as a high-ranking member of LGFM. But either would still require being recognized as an LGFM member or mistaken as a member of another gang or cartel. And, as the IJ noted, such events are unlikely because Lopez-Galeno has no visible tattoos that would identify his past association.

Third, Lopez-Galeno argues the Agency misunderstood the scope of cartel activity. He says the IJ improperly reduced the weight of Dr. Kirkland's expert report because that report focused on cartel conditions in Tierra Caliente instead of San Miguel. But the IJ's decision was reasonable: both Dr. Kirkland's testimony and the cartel map in the record support the conclusion that San Miguel is close to but outside Tierra Caliente. Similarly, Lopez-Galeno points out the IJ incorrectly stated the Jalisco Cartel does not currently operate in Puebla. The BIA reasonably concluded that this was only a slight

5

misstatement by the IJ, as the Jalisco Cartel operates in Puebla only by "proxy," predominately engaging in fuel theft, and does not pose a major threat.[5] A.R. 8 n.8.

Finally, Lopez-Galeno argues the Agency made an "implied determination regarding Mr. Lopez-Galeno's ability to relocate," Opening Br. 28, by stating that he will "live with family in San Miguel Tilapa and scrupulously avoid gang involvement," A.R. 55, 91. Not so. "Ability to relocate" refers to one of the relevant considerations in assessing the likelihood of torture: whether "the applicant could relocate to a part of the country of removal where he or she is not likely to be tortured." 8 C.F.R. § 1208.16(c)(3)(ii). But San Miguel is Lopez-Galeno's hometown and where his family resides, so returning there would not be "relocating" within Mexico.[6]

### III.

For these reasons, we will deny Lopez-Galeno's petition for review.

---

[5] Since there is no likelihood of torture, we need not consider whether public officials would acquiesce. *See Myrie v. Att'y Gen.*, 855 F.3d 509, 516 (3d Cir. 2017).

[6] Lopez-Galeno also challenges the finding that he will "scrupulously avoid gang involvement," A.R. 55, but that is merely acceptance of his statement that he does not "want to have anything else to do with gangs," A.R. 182.