**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 25-1814

_____

WALTER GUSTAVO SUAREZ JUAREZ; ANA LUCIA JARA MONTOYA; A. B. S.
J.; X. V. S.J.; G. A. S.J.,
Petitioners

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA
_____

ON PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS
(Agency Nos. A220-738-782, A240-075-272, A240-075-273, A240-075-274, A240-075-
275)
Immigration Judge: Maria I. Akalski
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
March 2, 2026
_____

Before: SHWARTZ, BIBAS, and PHIPPS, <u>Circuit Judges</u>.

(Filed: March 3, 2026)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7,
does not constitute binding precedent.

**SHWARTZ**, <u>Circuit Judge</u>.

Walter Suarez Juarez, his wife, and his children petition for review of a decision of the Board of Immigration Appeals ("BIA") granting their motions to reconsider but denying their motions to reopen. For the reasons set forth below, we will deny the petitions.

I

Juarez is a native citizen of Peru, where he worked as a taxi driver. Extortionists demanded that he pay them one hundred soles a week to continue working, and he did so for about a year. In November 2021, Juarez could no longer afford the payments. The next month, armed extortionists beat and threatened him at his workplace. Juarez reported this assault to the police the day it occurred. The police advised him that they were unable to protect him and to leave the area because the extortionists had recently murdered other taxi drivers.

Thereafter, Juarez and his family entered the United States without being admitted or paroled. His sister lives in his house in Peru and she told Juarez that apparent extortionists appeared there looking for him.

Petitioners were issued a notice to appear for removal proceedings. They conceded removability but sought asylum[1] based on persecution on account of Juarez's

---

[1] Because Petitioners' arguments before us relate to only their asylum application, they have forfeited any arguments based on their applications for withholding of removal or protection under the Convention Against Torture. <u>Leslie v. Att'y Gen. U.S.</u>, 611 F.3d 171, 174 n.2 (3d Cir. 2010).

membership in the particular social group ("PSG") of "cooperating witnesses who publicly denounce organized criminal activity."[2]  AR 184.

The IJ found Juarez credible but denied relief.  The IJ concluded that Juarez was targeted because the extornitists wanted his money, and not because of his membership in any PSG.  Petitioners appealed to the BIA.  The BIA declined to decide whether a PSG of cooperating witnesses who publicly denounce organized crime was cognizable but concluded that Juarez had not demonstrated that membership therein was "at least one central reason" for his assault.  AR 117.

After the appeal was dismissed, Juarez learned that his father, Walter Suarez Cervantes, was threatened and beaten.  His father survived the attack but received a funeral flower arrangement with a note containing the name "Walter Suarez."  AR 59, 80.

Petitioners moved to reopen the removal proceedings based on the attack on Juarez's father.  He provided photographs of the floral arrangement, his father's hospital records, and a sworn statement affirming that (1) the note accompanying the flower arrangement demanded information on Juarez's whereabouts, threatened harm to Juarez's father and his family members if he refused, and identified the criminal organization

---

[2] Before the IJ, Petitioners also asserted that Juarez belonged to the PSG of "former taxi drivers who refuse extortion demands," AR 184, but they do not rely on this PSG before us, so any argument based on that PSG is forfeited.  Leslie, 611 F.3d at 174 n.2.

"Tren de Aragua,"[3] (2) his father believes he was attacked because Tren de Aragua is looking for Juarez, and (3) Juarez himself believes the gang is looking for him "because [he] cooperated with the police when [he] was physically assaulted." AR 60. The new evidence also includes a police report filed by Juarez's father indicating his belief that he was attacked and threatened because of Juarez's 2021 police complaint. Petitioners argued that the new evidence demonstrated prima facie eligibility for relief based on Juarez's persecution on account of his membership in the PSG of "cooperating witnesses who publicly denounce organized criminal activity." AR 51. The BIA denied the motion to reopen because the new evidence would not "likely change the result." AR 31.

Petitioners moved for reconsideration, asserting that the standard on a motion to reopen is whether the movant is reasonably likely to show that he is entitled to relief, not whether new evidence would likely change the result. The BIA granted reconsideration to correct its articulation of this standard. It then assessed the motion to reopen under the proper standard and denied it because, even with the new evidence, Petitioners were not reasonably likely to show the required nexus between Juarez's membership in a PSG and his harm.

Juarez and his family members petition for review.

---

[3] The photograph of the note accompanying the flower arrangement clearly reads "Walter Suarez," which is also the name of Juarez's father, but otherwise does not reflect a request for Juarez's whereabouts or identify Tren de Aragua. AR 80.

4

II[4]

A movant seeking reopening of removal proceedings must identify material

evidence that "was not available and could not have been discovered or presented at the

former hearing." 8 C.F.R. § 1003.2(c)(1). The BIA may deny reopening if "the movant

has failed to establish a prima facie case for the relief sought." Sevoian v. Ashcroft, 290

F.3d 166, 169 (3d Cir. 2002). To make that prima facie case, the movant must "produce

objective evidence showing a 'reasonable likelihood' that he can establish [that he is

entitled to relief]." Darby v. Att'y Gen. U.S., 1 F.4th 151, 160-61 (3d Cir. 2021)

(alteration in original) (quoting Guo v. Ashcroft, 386 F.3d 556, 563 (3d Cir. 2004), as

amended (Dec. 3, 2004)).

To be eligible for asylum, Petitioners must establish that Juarez's PSG

membership "was or will be at least one central reason for" his persecution. See

Thayalan v. Att'y Gen. U.S., 997 F.3d 132, 138, 142 (3d Cir. 2021) (quoting 8 U.S.C.

§ 1158(b)(1)(B)(i)).[5] In their motion to reopen, Petitioners therefore needed to show that

---

[4] The IJ had jurisdiction under 8 C.F.R. §§ 1208.2(b) and 1240.1(a); the BIA had jurisdiction under 8 C.F.R. §§ 1003.1(b) and 1003.2, and we have jurisdiction under 8 U.S.C. § 1252(a) and (b)(6). Darby v. Att'y Gen. U.S., 1 F.4th 151, 159 (3d Cir. 2021). We review "the BIA's denial of a motion to reopen for abuse of discretion and will not disturb the BIA's determination unless it is arbitrary, irrational, or contrary to law." Id.

[5] As relevant here, to be eligible for asylum, the applicant must show that he is "unable or unwilling to return to, and is unable or unwilling to avail himself . . . of the protection of [the country to which he would be removed] . . . because of persecution or a well-founded fear of persecution on account of . . . membership in a [PSG]," 8 U.S.C. § 1101(a)(42)(A). Persecution is "on account of" membership in a PSG only if the PSG membership "was or will be at least one central reason for" the persecution. Thayalan, 997 F.3d at 138, 142 (quoting 8 U.S.C. § 1158(b)(1)(B)(i)).

they were reasonably likely to prove that Juarez's membership in a PSG "was or will be" a reason for his persecution. Id. (quoting 8 U.S.C. § 1158(b)(1)(B)(i)); see Darby, 1 F.4th at 160-61.

Petitioners' new evidence fails to make that showing. As an initial matter, the harm Juarez experienced before reporting his assault to the police could not have been motivated by his status as a cooperating witness who publicly denounced organized crime because the assault predated his cooperation with police, and he does not claim to have otherwise cooperated or denounced organized crime.

Although Juarez and his father believe that Juarez's cooperation caused the harm that followed the police report, namely, the attack on and threat against Juarez's father, Petitioners identify no factual bases for those beliefs, and the record is devoid of evidence that the extortionists knew Juarez cooperated.[6] See Hernandez Garmendia v. Att'y Gen. U.S., 28 F.4th 476, 483 (3d Cir. 2022) (requiring applicant to show "that the persecutor knows or believes that the applicant possesses the protected characteristic"). Rather, the record shows that Juarez paid the extotionists for a year and was assaulted when those payments stopped. Moreover, the extortionists did not subsequently refer to Juarez's cooperation with police. This supports the conclusion that the extortionists were motivated by money, not Juarez's police report. Therefore, the BIA did not abuse its

---

[6] Juarez testified only that "it is possible that [the extortionists] have found out that [he] reported them" because "the police started to carry out procedures and operations at the place where [he] had been extorted." AR 253.

6

discretion by denying Petitioners' motion to reopen for failing to establish a prima facie case of eligibility for relief.

## III

For the foregoing reasons, we will deny the petition.