**PRECEDENTIAL**


UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-2322 & 21-3089
_____

IVIS ALEXANDER-MENDOZA,
Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA
_____

On Petition for Review of an
Order of the Board of Immigration Appeals
(A093-493-496)
Immigration Judge:  Alice Song Hartye
_____

Argued:  June 28, 2022

Before:  JORDAN, PORTER, and PHIPPS, *Circuit Judges*.

(Filed:   December 2, 2022)
_____

Valentine A. Brown
Ryan F. Monahan          **[Argued]**
DUANE MORRIS
30 South 17th Street
Philadelphia, PA 19103

*Counsel for Petitioner*

Jeffrey M. Hartman          **[Argued]**
Jessica Dawgert
Margot P. Kniffin
UNITED STATES DEPARTMENT OF JUSTICE
OFFICE OF IMMIGRATION LITIGATION
P.O. Box 878
Ben Franklin Station
Washington, DC 20044

*Counsel for Respondent*

_____

OPINION OF THE COURT
_____


PHIPPS, *Circuit Judge*.

These consolidated petitions both concern the validity of a detained alien's waiver of an administrative appeal in a removal proceeding. The alien's initial counsel withdrew, and the alien represented himself at the merits hearing on his requests for relief from removal. After denying the alien's requests and ordering the alien's removal, the Immigration Judge informed the alien that he had a right to administratively appeal the removal order to the Board of Immigration Appeals and that the right could be waived. Following a brief break, the alien waived that right, testifying that he would rather be deported than remain in custody. But then days afterward, the

2

alien filed a *pro se* notice of appeal.  Later, in a brief filed with the BIA by *pro bono* counsel, the alien disputed the order of removal.

The BIA issued an order dismissing the administrative appeal.  It determined that the waiver of an administrative appeal was valid, and on that basis, it enforced the appellate waiver.

The alien then filed a motion for reconsideration with the BIA.  He argued that the waiver was invalid for several reasons.  The BIA issued an order denying that motion.

Through separate petitions, which have been consolidated in this case, the alien challenges the BIA's two orders.  Because the administrative record does not compel the conclusion that the alien's waiver was invalid, and because the BIA did not abuse its discretion in denying the alien's motion to reconsider, both petitions will be denied.

## FACTUAL BACKGROUND
### (FROM THE ADMINISTRATIVE RECORD)

As a teenager, Ivis Alexander Mendoza-Cloters ('Mendoza') worked as an auto mechanic in his native city of El Progeso, Honduras.  Two gangs in that city recruited him, and he rebuffed those efforts for years.  But after he lost his job, one of the gangs, MS-13, would intercept him on his way to the store and beat him with a machete handle for 13 minutes at a time.  That period of nearly daily beatings occurred between 2000 and 2001.

To escape and also to find employment, Mendoza entered the United States in 2002 at age 18 without inspection or parole.  He settled in New Jersey, where he had family.

Between 2004 and 2008, he was arrested three separate times and charged with several crimes: burglary, criminal

mischief, harassment, making terroristic threats, and unlawful possession of a weapon. Those charges stemmed from domestic issues with his then-girlfriend. Although most of those charges were eventually dismissed, Mendoza was convicted of criminal mischief.

In May 2008, while Mendoza was in the Middlesex County Jail, Immigration and Customs Enforcement agents found him and initiated removal proceedings against him. Later that year, Mendoza accepted voluntary departure and returned to his country of citizenship, Honduras.

His homecoming to El Progreso did not go well. The MS-13 gang robbed him, stabbed him, and broke his nose.

Mendoza again illegally entered the United States in October 2009 and returned to New Jersey. He found work as an auto mechanic and this time did not catch the attention of the authorities for over a decade. But in August 2020, after a domestic disturbance at his house with his girlfriend at the time, he was arrested and charged with simple assault. That charge alerted immigration authorities to his illegal presence, and he was held in custody on an immigration detainer. The next month, the Department of Homeland Security served Mendoza with a Notice to Appear thus charging him as removable for entering without inspection or parole. *See* 8 U.S.C. § 1182(a)(6)(A)(i). Included with the Notice to Appear were lists of *pro bono* immigration legal services providers in his region.

## PROCEDURAL HISTORY

### A. PROCEEDINGS IN IMMIGRATION COURT

Mendoza's removal proceedings involved hearings on four dates between October 2020 and January 2021. Before the first hearing, an attorney entered an appearance on Mendoza's behalf in Immigration Court.

4

The initial hearing was a master calendar hearing before an Immigration Judge in Falls Church, Virginia. Mendoza appeared through a video link from the facility where he was detained, and his counsel appeared telephonically – as they each would do for every subsequent hearing that they attended. After inquiring about which language Mendoza understood best, the Immigration Judge, through a Spanish language interpreter, asked Mendoza whether the attorney appearing on his behalf represented him and was authorized to speak on his behalf. Mendoza responded affirmatively. From there, his counsel asked for a continuance, which the Immigration Judge granted.

During that continuance, Mendoza, through his attorney, made two filings. Using a Form I-589, he applied for several forms of relief from removal: asylum, statutory withholding of removal, and protection under the Convention Against Torture. He also moved for release on bond and attached statements from three persons who endorsed his good character.

The case resumed before an Immigration Judge in York, Pennsylvania. At the next hearing, Mendoza, through counsel, conceded removability and informed the Immigration Judge that he would pursue only relief from removal. That same day, in a hearing on Mendoza's bond motion, a dispute arose between Mendoza's attorney and DHS counsel over the extent of Mendoza's criminal history. Mendoza's attorney stated that Mendoza had only the arrest related to the recent domestic disturbance, but the DHS attorney identified past arrests and the conviction for criminal mischief. To resolve that issue, the Immigration Judge questioned Mendoza, who admitted to the recent arrest for domestic violence, as well as his other arrests and charges between 2004 and 2008. With those additional details, the Immigration Judge denied Mendoza release on bond because he failed to establish that he was not a danger to the community.

After that hearing, Mendoza's counsel moved to withdraw from representation. That motion explained that counsel had a conversation with Mendoza and his family, and that Mendoza wished to proceed *pro se*.

The next hearing was supposed to be the merits hearing to address Mendoza's application for relief from removal. Mendoza's counsel attended, but Mendoza could not participate – even by video teleconference – due to a COVID-19 quarantine order at his detention facility. Recognizing that the merits hearing should not proceed in Mendoza's absence, the Immigration Judge instead addressed the pending motion for counsel's withdrawal. In a colloquy with Mendoza's counsel, the Immigration Judge confirmed that counsel had spoken with Mendoza and had understood that Mendoza wished to proceed *pro se*:

> IJ:      [Y]ou indicate that you have spoken to your client and he was in agreement with the withdrawal request. Is that right?
>
> Counsel:      Yes, Your Honor. We, we had spoken to – I spoke to the client through an interpreter from our office and then also with the family members. Initially we had only been hired for the first proceeding and also bond. I asked him if they wanted to proceed with an attorney or what they wanted to do. From my last conversation with the family, and the individual who is actually a friend who initially hired us, it looks like he was going to be

6

> proceeding *pro se*, at least that was
> our understanding.

Hr'g Tr. at 10:11–19 (Dec. 8, 2020) (App. 181). The Immigration Judge then granted the attorney's motion to withdraw, and postponed the merits hearing for five weeks.

At the merits hearing on January 14, 2021, the Immigration Judge acknowledged that Mendoza was not represented by counsel. Then, after admitting statements of support submitted by his girlfriend and his coworker, the Immigration Judge examined Mendoza, who described the abuse that gangs had inflicted upon him in Honduras. In articulating his fears associated with returning to Honduras, Mendoza focused on the gang violence, but he also raised concerns about unemployment and hurricanes.

After a brief recess, the Immigration Judge announced that she would deny Mendoza's requests for relief from removal. She found Mendoza credible but determined that his claims did not warrant relief. His application for asylum was too late, and he did not qualify for withholding of removal or protection under CAT because he did not demonstrate a likelihood of either persecution or torture.

Before adjourning the hearing, the Immigration Judge informed Mendoza of his right to administratively appeal her decision. *See* 8 C.F.R. § 1003.3(a)(1). The Immigration Judge explained that Mendoza could waive that right, and she provided a preview of the consequences for both alternatives:

> You do have a right to appeal to the higher Court,
> the Board of Immigration Appeals, or you can
> waive your right to appeal. By waiving your
> right, what that means is your case would be final
> today. And I just want you to understand, sir,
> that if you do reserve appeal, you would, most
> likely, continue to remain detained during the

7

pendency of your appeal. I'm not trying to deter you from reserving appeal, but I just want you to be fully, fully aware of that. I don't know how long an appeal will take, but I will tell you that in the other cases I've seen, it seems to be taking, in some cases, it could be up to a year. I just don't know.

Merits Hr'g Tr. at 58:7–14 (App. 174).

With that explanation, the Immigration Judge asked Mendoza whether he wanted to reserve or waive the right to appeal. In posing that question, the Immigration Judge emphasized that Mendoza did not have to decide immediately, and she offered to "reserve [his] right to appeal and . . . proceed that way," if Mendoza was "not sure." *Id.* at 58:18–19 (App. 174). She also afforded Mendoza time to speak with his girlfriend, which he did. After a brief break, Mendoza returned and announced that he wanted to waive his right to administrative appeal:

> Mendoza: Yes. I've decided, I've decided to take the deportation, even though that I'm afraid to go there, but if I'm not going to be released on a bond to fight my case on the outside, I don't want to be incarcerated for any longer.

> IJ: Okay. And, sir, I do recognize that. I just want to make sure if you do accept it, it's final today. It is final and you can't later change your mind and say you want to appeal the decision. So hearing that, sir, do, do you still want to accept the decision as final and waive your right to appeal?

8

Mendoza: No. I want to – I don't – I want to leave. I don't want to be locked up in here any longer. I have not killed anyone. Those are the terrorists that attacked the Capitol.

IJ: Okay. So you want to waive your right to appeal and accept it as final, correct?

Mendoza: Yes. . . .

*Id.* at 60:22–61:11 (App. 176–77). On the understanding that neither party would appeal, the Immigration Judge issued a final removal order.

### B. ADMINISTRATIVE APPEAL BEFORE THE BIA

Any sense of closure that came with that order disappeared eleven days later, when Mendoza filed a *pro se* notice of appeal. In briefing the appeal, Mendoza was represented by new *pro bono* counsel, and he disputed the Immigration Judge's denials of statutory withholding and protection under CAT. He also claimed that his prior counsel's performance materially damaged his case. The government responded by defending the Immigration Judge's challenged rulings.

Although neither party addressed Mendoza's waiver of administrative appeal, the BIA did not lose sight of that issue. It considered *sua sponte* the validity of Mendoza's waiver and determined that he had waived the right. The BIA then dismissed Mendoza's appeal for lack of jurisdiction.

Mendoza used a dual-track strategy to challenge that order. He timely petitioned this Court to review the order. He also filed a motion for reconsideration with the BIA. In that filing, he argued that his statements to the Immigration Judge did not amount to a waiver of administrative appeal. He also asserted

9

that even if his statements could be construed as a waiver, any such waiver was unenforceable because he received ineffective assistance of counsel, was later abandoned by counsel, and was not notified at any time by the Immigration Judge of his right to counsel. The BIA denied Mendoza's motion for reconsideration. It determined that Mendoza "d[id] not establish any error of fact or law in [the BIA's] prior decision," explaining that the Immigration Judge "informed [Mendoza] many times that he was waiving his right to appeal the decision," and he "affirmatively replied that he wanted to waive his right to appeal." BIA Opinion Mot. Recons. at 2 (App. 10). The BIA similarly rejected Mendoza's remaining arguments because he failed to connect the alleged deficiencies to "his personal decision to waive his right to appeal." *Id.* Mendoza timely petitioned this Court to review the order denying his motion for reconsideration.

Those petitions fall within this Court's jurisdiction, *see* 8 U.S.C. § 1252(a)(1), and they were consolidated for purposes of resolution, *see* 8 U.S.C. § 1252(b)(6) (requiring consolidation of review of order and motion to reconsider).

## DISCUSSION

An alien's right to administratively appeal a removal order is not grounded in the Constitution.[1] Instead, for a period, a statute, the Immigration and Nationality Act of 1952, expressly provided a right to appeal decisions of special inquiry officers to the Attorney General.[2] Over time, implementing regulations

---

[1] *See Dia v. Ashcroft*, 353 F.3d 228, 242 (3d Cir. 2003) (en banc) ("Quite clearly, '[a]n alien has no constitutional right to any administrative appeal at all.'" (quoting *Albathani* v. *INS*, 318 F.3d 365, 376 (1st Cir. 2003))); *Guentchev v. INS*, 77 F.3d 1036, 1037–38 (7th Cir. 1996).

[2] *See* Immigration and Nationality Act of 1952, Pub. L. No. 414, § 236(b), 66 Stat. 163, 200 (1952) (codified at 8 U.S.C. § 1226(b) (1952)) ("From a decision of a special inquiry

restructured the BIA and also conferred it with appellate jurisdiction,[3] and special inquiry officers were retitled as Immigration Judges.[4]  After it was amended in 1996, the Immigration and Nationality Act no longer expressly provides a right to an administrative appeal; rather, the statute requires only notice of the right to an administrative appeal:

> If the immigration judge decides that the alien is removable and orders the alien to be removed, the judge shall inform the alien of the right to appeal that decision and of the consequences for failure to depart under the order of removal, including civil and criminal penalties.

Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, sec. 304(a)(3), § 240(c)(4), 110 Stat. 3009, 3009-593 (1996) (currently codified at 8 U.S.C. § 1229a(c)(5)); *cf.* 8 U.S.C. § 1158(d)(5)(A)(iii), (iv) (referencing the administrative appeal process).  At present, an alien's right to administratively appeal a removal order exists

---

officer excluding an alien, such alien may take a timely appeal to the Attorney General, and any such alien shall be advised of his right to take such appeal.").

[3] While the BIA had existed within the Office of the Attorney General since 1940, *see* Regulations Governing Departmental Organization and Authority, 5 Fed. Reg. 3502, 3503 (Sept. 4, 1940) (establishing the BIA within the Office of the Attorney General), regulations following the 1952 Act reorganized the BIA in the Department of Justice and clarified its administrative appellate jurisdiction, *see* Miscellaneous Amendments to Chapter, 23 Fed. Reg. 9115, 9117 (Nov. 26, 1958).

[4] *See* Immigration Judge, 38 Fed. Reg. 8590, 8590 (Apr. 4, 1973) (amending regulations to provide that "[t]he term 'immigration judge' means special inquiry officer and may be used interchangeably with the term special inquiry officer").

solely by virtue of the implementing regulations. *See* 8 C.F.R. § 1003.38(a); *id.* § 1003.1(b)(3); *id.* § 1003.3(a)(1); *see also Albathani v. INS*, 318 F.3d 365, 376 (1st Cir. 2003) ("[A]dministrative appeal rights as exist are created by regulations promulgated by the Attorney General.").

An alien may waive that regulatory right to an administrative appeal. To be valid, such a waiver must be knowing, intelligent, and voluntary. *See Richardson v. United States*, 558 F.3d 216, 219–20 (3d Cir. 2009) ("An alien validly waives his rights associated with a deportation proceeding only if he does so voluntarily and intelligently."); *Rodriguez-Diaz*, 22 I. & N. Dec. 1320, 1322 (BIA 2000) ("[I]t is important that any waiver be knowingly and intelligently made." (citing *United States v. Mendoza-Lopez*, 481 U.S. 828, 840 (1987))). A valid waiver of an administrative appeal strips the BIA of its appellate jurisdiction. *See In re Patino*, 23 I. & N. Dec. 74, 76 (BIA 2001) (en banc) ("[T]he Board may not exercise jurisdiction over a case once the right to appeal has been waived."); *see also* 8 C.F.R. § 1003.3(a)(1) ("A Notice of Appeal may not be filed by any party who has waived appeal pursuant to § 1003.39."). And, without the BIA having jurisdiction, an Immigration Judge's order becomes final. *See* 8 C.F.R. § 1003.39.

Both of Mendoza's petitions hinge on the validity of his waiver. If Mendoza can establish that he did not validly waive an administrative appeal, then this case should be remanded to the BIA to consider the merits of his appeal. If he cannot, then the BIA correctly declined jurisdiction over his administrative appeal, and Mendoza's petitions should be denied. For the reasons below, Mendoza cannot establish the invalidity of his waiver of his right to an administrative appeal, and his petitions will be denied.

### A. MENDOZA'S FIRST PETITION

Mendoza's first petition challenges the BIA's initial order dismissing his administrative appeal. In that order, the BIA explained that Mendoza validly waived his appellate rights, and therefore it declined jurisdiction. Because his criminal history is not severe enough to trigger the criminal-alien bar, *see* 8 U.S.C. § 1252(a)(2)(C), Mendoza can challenge that factual finding in federal court. *See id*. § 1252(b)(9).

### 1. Standard of Review for Agency Factual Findings in Immigration Proceedings

Judicial review of factual challenges to a removal order proceeds under the highly deferential substantial evidence standard. *See Galeas Figueroa v. Att'y Gen.*, 998 F.3d 77, 91 (3d Cir. 2021).

As a baseline, 'substantial evidence' is a term of art in administrative law. Traditionally, it described an analytical framework for both the breadth and depth of judicial review of agency factfinding. As far as breadth, in reviewing an agency's finding of a fact, a court should consider the "whole record." 5 U.S.C. § 706; *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). For trial-like adjudications, the whole record typically includes the "transcript of the testimony and exhibits, together with all papers and requests filed in the proceeding," 5 U.S.C. § 556(e), as well as initial findings by agency decisionmakers, *see id.* § 557(c) ("All decisions, including initial, recommended, and tentative decisions, are a part of the record."). Review of the whole record also involves "tak[ing] into account whatever in the record fairly detracts from" a factual finding. *Universal Camera*, 340 U.S. at 488. As for the depth of judicial scrutiny, a court traditionally evaluates whether the evidence in the administrative record would allow a reasonable mind to reach the agency's conclusion. *See Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938) ("Substantial evidence is more than a mere scintilla. It means

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.").

For a long period, the traditional substantial evidence standard governed judicial review of orders in immigration proceedings.  The 1961 amendments to the Immigration and Nationality Act expressly limited judicial review to the administrative record, the whole of which would be scrutinized for substantial evidence:

> [Subject to an exception for genuine disputes about a petitioner's nationality] the petition shall be determined solely upon the administrative record upon which the deportation order is based and the Attorney General's findings of fact, if supported by reasonable, substantial, and probative evidence on the record considered as a whole, shall be conclusive.

Immigration and Nationality Act of 1961, Pub. L. No. 87-301, sec. 5(a), § 106(a)(4), 75 Stat. 650, 651 (1961) (codified at 8 U.S.C. § 1105a(a)(4) (1964)).  Following that amendment, this Court applied the traditional substantial evidence standard when reviewing agency findings of fact in immigration proceedings.  *See, e.g.*, *Amezquita-Soto v. INS*, 708 F.2d 898, 902 (3d Cir. 1983); *Bastidas v. INS*, 609 F.2d 101, 104 (3d Cir. 1979); *Sawkow v. INS*, 314 F.2d 34, 37–38 (3d Cir. 1963).

But in the early and mid 1990s, the judicial review of agency factfinding in immigration cases became much more deferential.  In *INS v. Elias-Zacarias*, 502 U.S. 478 (1992), the Supreme Court explained that to reverse a factual finding by the BIA requires "that the evidence not only *supports* that conclusion, but *compels* it . . . ."  *Id.* at 481 n.1.  And through legislation in 1996, Congress conformed the statutory text to that standard, such that courts had to treat findings of fact in an immigration proceeding as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary."

14

Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, sec. 306(a)(2), § 242(b)(4)(B), 100 Stat. 3009, 3009-608 (codified at 8 U.S.C. § 1252(b)(4)(B)); *see also Sevoian v. Ashcroft*, 290 F.3d 166, 171 (3d Cir. 2002) ("The Reform and Responsibility Act codifies the language the Supreme Court used in *Elias-Zacarias* to describe the substantial evidence standard in immigration cases.").

More recent decisions by the Supreme Court confirm that an agency's factual findings in immigration proceedings are reviewed, not under the traditional substantial evidence standard, but under the highly deferential form of that standard articulated by *Elias-Zacarias* and codified in 1996. *Compare Garland v. Ming Dai*, 141 S. Ct. 1669, 1677 (2021) (quoting 8 U.S.C. § 1252(b)(4)(B)), *and Nasrallah v. Barr*, 140 S. Ct. 1683, 1692 (2020) (same), *with Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (applying the traditional substantial evidence standard in a social security case without the modifier 'highly deferential').[5] Whether the 'highly deferential' modifier serves purely as a description or as a new term of art is immaterial: in reviewing agency factfinding in an immigration proceeding, a court examines the whole record,

---

[5] As further corroboration, two recent dissenting opinions, which reflect the views of a combined six Justices, explain – not as a disputed point of law but as an established principle – that the standard of judicial review for agency factfinding in immigration cases is more deferential than the traditional substantial evidence standard. *See Patel v. Garland*, 142 S. Ct. 1614, 1630 (2022) (Gorsuch, J., dissenting) (explaining that normally federal courts review agency factual findings under the substantial evidence standard but that "[a] similar, *if surely more deferential*, principle finds voice in the INA" (emphasis added)); *Guerrero-Lasprilla v. Barr*, 140 S. Ct. 1062, 1076 (2020) (Thomas, J., dissenting) (describing the INA's standard for judicial review of agency factfinding as an "extremely deferential standard").

considers the weight of facts that detract from the agency's conclusion, and sets aside the agency's findings only if a "reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). To be so compelled, an alternative finding cannot be simply as persuasive as the agency's, or even marginally better – it must be so superior relative to the agency's finding that no "reasonable adjudicator could have found as the agency did" over the alternative. *Ming Dai*, 141 S. Ct. at 1678. Also, under this highly deferential standard, an agency's failure to consider detracting evidence does not, by itself, justify setting aside a factual finding. Rather, for an agency's finding of fact to be set aside on this basis, the neglected detracting evidence, if considered, would have to compel a reasonable adjudicator to reach a contrary conclusion. *See Nasrallah*, 140 S. Ct. at 1692; *Elias-Zacarias*, 502 U.S. at 481.

## 2. The BIA's Factual Finding of a Valid Waiver Must Be Upheld.

Under highly deferential substantial evidence review, Mendoza's first petition can succeed only if the administrative record compels the conclusion that he did not knowingly, voluntarily, and intelligently waive his right to an administrative appeal. *See* 8 U.S.C. § 1252(b)(4)(B). He does not make that showing.

The record does not compel the conclusion that Mendoza unknowingly waived his right to an administrative appeal. The Immigration Judge presented Mendoza with his options: he could exercise his "right to appeal to the higher court, the Board of Immigration Appeals, or [he could] waive [his] right to appeal." Merits Hr'g Tr. at 58:7–8 (App. 174). The Immigration Judge then explained that if Mendoza waived that right, he could not "later change [his] mind and say [that he] want[ed] to appeal the decision." *Id.* at 61:2–3 (App. 177); *see Rodriguez-Diaz*, 22 I. & N. Dec. at 1323 (holding that "in cases involving unrepresented aliens," the Immigration Judge

16

should typically provide the alien a "more detailed explanation[]" of the right to appeal). Following that explanation, Mendoza recognized that he had a decision to make, took a break, and ultimately waived the right to appeal. Without more, the record does not compel the conclusion that Mendoza misunderstood the choice before him. *Cf. Biwot v. Gonzales*, 403 F.3d 1094, 1098 (9th Cir. 2005) (concluding that an alien's waiver of an administrative appeal was invalid because the alien "was under the misapprehension that he had no choice but to waive his appeal").

Although the Immigration Judge explained the right to an administrative appeal to Mendoza, she did not identify every downstream consequence of the waiver, such as the loss of a pathway to judicial review. *See* 8 U.S.C. § 1252(d)(1) ("A court may review a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as of right . . . ."). But complete knowledge of every potential consequence of a contemplated action is not required for a knowing waiver. *See United States v. Khattak*, 273 F.3d 557, 561 (3d Cir. 2001) ("Waivers of the legal consequences of unknown future events are commonplace. . . . [T]he prospective nature of waivers has never been thought to place [them] off limits or to render a defendant's act unknowing." (internal citation and quotation marks omitted)).[6] And here, the Immigration Judge, in informing Mendoza of his right to an administrative appeal, explained the immediate consequences of his decision, which Mendoza apparently understood when he said he accepted those consequences. Thus, a reasonable adjudicator would not be compelled to conclude that the absence of a preview of the more remote

---

[6] Consistent with that principle, the BIA fashioned a model notice that explains the most immediate consequences associated with the decision to waive an administrative appeal. *In re Rodriguez-Diaz*, 22 I. & N. Dec. at 1323 n.2 (setting forth a model waiver notice that does not mention that an administrative appeal is needed to preserve judicial review).

17

consequences associated with waiving an administrative appeal rendered Mendoza's decision unknowing.

The administrative record similarly does not compel the conclusion that Mendoza's waiver was involuntary. After explaining the appellate options to Mendoza, the Immigration Judge offered to preserve Mendoza's right to appeal if he were uncertain about waiving. The Immigration Judge also allowed a brief recess for Mendoza to discuss the matter with his girlfriend. When the proceeding resumed, Mendoza stated that he wanted to waive the appeal. Upon further questioning by the Immigration Judge, Mendoza confirmed his intention to waive his right to appeal.

Despite those facts, Mendoza asserts that his waiver was coerced. He argues that the Immigration Judge's forecast that he might remain in detention for up to year during the pendency of appeal pressured him to waive his appeal. But it would require much more than an Immigration Judge's predictive assessment of the timeline for an administrative appeal to compel the conclusion that Mendoza's waiver was coerced – particularly since such an informative assessment could have augmented his knowledge and intelligence in deciding whether to waive the right. *See, e.g.*, *Borbot v. Warden Hudson Cnty. Corr. Facility*, 906 F.3d 274, 278 (3d Cir. 2018) (discussing not atypical instances where an alien is detained pending removal for over a year). Because Mendoza offers nothing more from the administrative record in support of his coercion contention, he cannot overcome the BIA's finding that he voluntarily waived his right to an administrative appeal.

Similarly, the administrative record does not compel the conclusion that Mendoza's waiver was unintelligent. The decision to waive an administrative appeal for a detained alien involves deciding between two imperfect options: release from detention accompanied by a return to an allegedly hostile homeland, or continued detention during the pendency of

18

further administrative review and potentially judicial review too. But from the administrative record, Mendoza understood the limited options before him, and after a break to consider them, he decided to "take the deportation" despite his stated fear of returning to Honduras because he did not "want to be incarcerated for any longer." Merits Hr'g Tr. at 60:22–24 (App. 176). That was not an unintelligent choice.

In concluding that Mendoza's waiver was intelligent, however, the BIA did not consider the fact that he was representing himself at the time. It may be that if Mendoza were represented, then his attorney could have provided an assessment of his case, so that he could have made a more informed decision about whether to waive administrative appeal. But the requirement for an intelligent waiver does not demand that the waiver be premised on the best possible rationale. Thus, although an assessment from counsel on the likelihood of success on appeal is potentially beneficial, its absence does not transform an otherwise intelligent waiver into an unreasoned decision. Indeed, the decision to waive appeal is traditionally reserved for the party – not counsel. *See McCoy v. Louisiana*, 138 S. Ct. 1500, 1508 (2018) (citing *Jones v. Barnes*, 463 U.S. 745, 751 (1983)). Still, even if Mendoza's *pro se* status at the time of his waiver did detract somewhat from his ability to assess all the possible consequences entailed in waiving administrative appeal, the BIA's failure to consider that fact would not alter the outcome on highly deferential substantial evidence review: accounting for his lack of counsel at the time of his waiver does not compel the conclusion that his waiver was unintelligent.

For these reasons, Mendoza's first petition will be denied.

## B. MENDOZA'S SECOND PETITION

After the dismissal of his administrative appeal, Mendoza filed a motion to reconsider that order with the BIA. He advanced several arguments, including three that attacked the

19

validity of his waiver.  He claimed that his waiver was invalid because (i) he was abandoned by counsel; (ii) he received ineffective assistance of counsel; and (iii) he was not notified by the Immigration Judge of his right to counsel.  The BIA denied that motion, and through his second petition Mendoza now presses those three arguments.

### 1.  The Scope and Standard of Review for Motions to Reconsider Removal Orders

Motions to reconsider BIA decisions contest "the correctness of the original decision based on the previous factual record." *Matter of O-S-G-*, 24 I. & N. Dec. 56, 57 (BIA 2006); 8 C.F.R. § 1003.2(b)(1) (explaining that a motion to reconsider focuses on "errors of fact or law in the prior Board decision"); 8 U.S.C. § 1229a(c)(6)(C) (same).  Accordingly, motions to reconsider cannot raise arguments dependent on supplemental facts; rather they must be based on the preexisting administrative record.  *See In re O-S-G-*, 24 I. & N. Dec. at 57 ("A motion to reconsider contests the correctness of the original decision based on the previous factual record . . . .").  Similarly, a motion to reconsider may generally dispute only the legal propositions previously before the BIA – either those raised in the alien's initial appeal or those relied upon by the BIA *sua sponte* in resolving the appeal.  *See id.* at 58; *see also Lin v. Att'y Gen.*, 543 F.3d 114, 126 (3d Cir. 2008).  Although a motion to reconsider does not allow a challenge to a removal order based on evidence not contained in the original administrative record, such a challenge may be brought through a motion to reopen, which Mendoza did not file.  *See In re O-S-G-*, 24 I. & N. Dec. at 57–58; 8 C.F.R. § 1003.2(c)(1); *compare* 8 U.S.C. § 1229a(c)(6) (setting forth procedural requirements for a motion to reconsider), *with id.* § 1229a(c)(7) (setting forth procedural requirements for a motion to reopen).

A court reviews an order by the BIA denying a motion to reconsider for an abuse of discretion.  *See Castro v. Att'y Gen.*,

20

671 F.3d 356, 364 (3d Cir. 2012) (citing *Pllumi v. Att'y Gen.*, 642 F.3d 155, 158 (3d Cir. 2011)); 8 C.F.R. § 1003.2(a) ("The decision to grant or deny a motion to . . . reconsider is within the discretion of the Board, subject to the restrictions of this section."). To constitute an abuse of discretion, a BIA order must be "arbitrary, irrational, or contrary to law." *Borges v. Gonzales*, 402 F.3d 398, 404 (3d Cir. 2005) (internal citation omitted). The BIA does not abuse its discretion by denying a motion for reconsideration predicated on either new evidence or legal arguments that could have been raised earlier because both of those grounds exceed the permissible limits for such a motion. Also, in the absence of record evidence compelling a contrary conclusion, the BIA does not abuse its discretion in declining to revise its prior factual findings.

### 2. The BIA Did Not Abuse Its Discretion in Denying Mendoza's Motion to Reconsider.

The BIA dismissed Mendoza's administrative appeal because it found that he validly waived the appeal. Due to the narrow scope of motions to reconsider, Mendoza's motion could challenge only that factual finding and only based on the preexisting administrative record. With those limitations, the BIA denied Mendoza's motion to reconsider. As explained below, the BIA did not abuse its discretion in making that determination.

> #### a. The BIA Did Not Abuse Its Discretion in Rejecting Mendoza's Argument that His Waiver Was Invalid due to Abandonment by Counsel.

Mendoza contends that because his former counsel abandoned him, his waiver of an administrative appeal was invalid. But the preexisting administrative record does not compel the conclusions either that Mendoza's counsel

abandoned him or that Mendoza's waiver was invalid due to his *pro se* status at the time.

To support his claim of abandonment by counsel, Mendoza relied on extra-record factual allegations. He asserted that he did not know of his counsel's withdrawal motion; that he did not consent to the withdrawal; and that he did not wish to proceed *pro se*.[7] But a motion to reconsider before the BIA is not an opportunity to supplement the administrative record with additional evidence. *See* 8 U.S.C. § 1229a(c)(7)(B); 8 C.F.R. § 1003.2(c)(1). If Mendoza wished to contest the validity of his waiver of an administrative appeal with extra-record evidence, then he should have filed a motion to reopen – a common practice for challenging counsel's performance in an immigration proceeding. *See, e.g.*, *Contreras v. Att'y Gen.*, 665 F.3d 578, 583 (3d Cir. 2012); *Fadiga v. Att'y Gen.*, 488 F.3d 142, 144 (3d Cir. 2007); *Zheng v. Gonzales*, 422 F.3d 98, 102 (3d Cir. 2005); *Xu Yong Lu v. Ashcroft*, 259 F.3d 127, 129 (3d Cir. 2001).[8] Because the BIA may not consider those extra-record factual allegations on a motion to reconsider, it was not an abuse of discretion for the BIA to reject Mendoza's abandonment-of-counsel argument.

Even if the preexisting record did establish that Mendoza was abandoned by counsel, that would not salvage his

---

[7] Mendoza also alleged that despite repeatedly calling the attorney's office, he had not spoken to the attorney since one call before the bond hearing, and the only response he received was from a secretary who informed him that the representation had ended.

[8] Mendoza's reconsideration motion, which was filed by his *pro bono* counsel, cannot be construed as a motion to reopen because it contained only unsworn allegations and not the type of evidence required to justify reopening the case. *See* 8 C.F.R. § 1003.2(c)(1) (providing that a motion to reopen "shall be supported by affidavits or other evidentiary material").

argument. The right to seek administrative appeal of the Immigration Judge's decision was his and his alone, *cf. McCoy*, 138 S. Ct. at 1508, and as explained above, the record does not compel the conclusion that his waiver was unknowing, involuntary, or unintelligent. Thus, it was not an abuse of discretion for the BIA to reject this basis for Mendoza's motion for reconsideration.

> *b. The BIA Did Not Abuse Its Discretion in Rejecting Mendoza's Claim that His Prior Counsel's Ineffective Assistance Invalidated His Waiver.*

Mendoza next argues that his waiver of an administrative appeal was invalid due to his former counsel's deficient performance at the bond hearing. This contention depends on a multi-step causal chain, starting with the claim that Mendoza's former counsel's incomplete knowledge of Mendoza's criminal history caused the Immigration Judge to deny his release on bond. From there, Mendoza submits that because he valued release more than an administrative appeal, he waived his right to an administrative appeal. He then argues that he would not have waived administrative appeal had he been released on bond.

Mendoza has a problem with the first inference in the chain. The record does not compel the conclusion that his former counsel's performance at the bond hearing caused the denial of his motion for release. After it became apparent that Mendoza's attorney did not know the full extent of Mendoza's criminal history, the Immigration Judge questioned Mendoza on that topic. Based on Mendoza's responses – the truth of which has never been disputed – the Immigration Judge denied bond. In light of the prominence of Mendoza's own testimony about his criminal history, the record does not compel the conclusion that his former counsel's incomplete knowledge of his criminal history caused the denial of the bond motion. But even if his former counsel's performance foreclosed the option

23

of appealing while released on bond, the choice before Mendoza – appealing while remaining detained or accepting the ruling and returning to Honduras – was still not coercive or confounding and thus did not negate the validity of his waiver.

### c. The Entire Immigration Proceeding Was Not Fundamentally Unfair.

As a last resort, Mendoza challenges the fundamental fairness of the immigration proceedings. In contending that the Immigration Judge violated due process by not specifically informing him of his right to representation, Mendoza relies principally on *Leslie v. Attorney General*, 611 F.3d 171 (3d Cir. 2010). In that case, an alien appeared without counsel at his first hearing in Immigration Court and was not notified by the Immigration Judge of the availability of *pro bono* counsel – as required by regulation. *Id.* at 174–75, 182; *see* 8 C.F.R. § 1240.10(a)(1)–(3). The alien was ordered removed, and his administrative appeal was denied by the BIA, all without him ever having representation. *See Leslie*, 611 F.3d at 174. In reviewing the alien's petition seeking review of that order, this Court held that, under those circumstances, the proceeding was fundamentally unfair regardless of whether the absence of counsel prejudiced the alien. *Id.*

At the outset, the facts of this case are distinguishable from *Leslie*. The record indicates that Mendoza received a list of *pro bono* counsel when he was served with the Notice to Appear. And he did not appear unrepresented at his first hearing; to the contrary, the Immigration Judge asked Mendoza whether he wanted to be represented by the attorney who appeared, and Mendoza responded that he did. That attorney also filed an application for relief from removal, moved for Mendoza's release on bond, and represented Mendoza at the bond hearing. The Immigration Judge permitted the attorney's withdrawal only after questioning the attorney and, from his answers, determining that Mendoza wished to proceed *pro se*. Thus, the two facts that influenced the holding in *Leslie* – the

24

Immigration Judge's violation of a regulation requiring notice of *pro bono* counsel *and* the lack of initial representation – are not present here.

But even if *Leslie* were extended to this situation, it would not alter the outcome. *Leslie* makes *voidable* removal orders in cases in which the Immigration Judge does not inform the alien of the availability of *pro bono* counsel and the alien proceeds *pro se*. But *Leslie* does not automatically *void* all orders from such an immigration proceeding.[9] Rather, to raise a *Leslie* due process challenge, an alien must timely appeal the order to the BIA – as occurred in *Leslie*. *See Leslie*, 611 F.3d at 174; *see also* 8 U.S.C. § 1252(d)(1); *Castro*, 671 F.3d at 365 ("A petitioner's failure to exhaust an issue by presenting it to the BIA deprives us of jurisdiction to consider that issue."). And here, Mendoza waived his right to an administrative appeal. Accordingly, even if *Leslie* were expanded to reach these facts, Mendoza could not litigate that issue now.

## CONCLUSION

For the foregoing reasons, we will deny the consolidated petitions for review.

---

[9] A contrary conclusion would undercut *Leslie*'s core holding by unfairly prejudicing aliens who receive mixed relief in Immigration Court. For example, a *pro se* alien who did not receive a list of *pro bono* legal service providers, and who was denied asylum but was granted CAT deferral may wish to administratively appeal the denial of asylum. But if the lack of notice of *pro bono* legal services would automatically void the proceeding, then the alien could not appeal the denial of asylum while retaining CAT deferral. Instead, the alien would have to choose between appealing (which would void the entire order including his CAT deferral) and not appealing (which would require forgoing seeking asylum).